STATE OF NORTH CAROLINA v. CARL OXENDINE

No. 133

(Filed 15 July 1980)

1. Homicide § 30.3 — lesser offense of involuntary manslaughter — instruction not required

The trial court did not err in refusing to submit the lesser included offense of involuntary manslaughter since the evidence was insufficient to raise an inference that the shooting was unintentional and, at most, resulted from the reckless use of a firearm where the evidence was overwhelming that, after the first altercation between defendant and deceased, defendant entered a trailer and remained inside for five to fifteen minutes; he then came out of the trailer with a rifle and walked over to where the victim was, using words which manifested a desire to continue the fight with weapons; and at very close range the rifle went off.

**2. Homicide § 28.5— defense of others—instruction not required**

   The trial court in a homicide prosecution did not err in failing to instruct the jury on the principle of defense of others where the evidence tended to show that, five to fifteen minutes after the first altercation between defendant and deceased, defendant, alone and armed with a rifle, approached deceased; at that time deceased was no serious threat to anyone; though there were approximately 100 people at the crime scene, none testified that they were afraid of deceased; and the only evidence of a threat by deceased was defendant's statement that deceased said he would kill defendant.

**3. Criminal Law § 114.2— court's summary of evidence—no expression of opinion**

   The trial court did not express an opinion in violation of G.S. 15A-1222 in his summarization of the evidence.

ON certiorari to review judgment of *Godwin, J.,* entered at the 24 April 1978 Criminal Session of Superior Court for HOKE County.

Upon a plea of not guilty, defendant was tried on a bill of indictment charging him with the murder of Eugene (Buddy) Locklear. The jury found him guilty of second-degree murder and from judgment imposing a prison sentence of 30 years, he gave notice of appeal to the Court of Appeals.

For the reason that defendant's record on appeal was not served or filed as provided by law and the Rules of Appellate Procedure, his appeal was dismissed. Thereafter, the Court of Appeals allowed defendant's petition for a writ of certiorari. Inasmuch as the record on appeal was not filed as required by the writ and the Rules of Appellate Procedure, on 16 October 1979 the appeal was dismissed again. 43 N.C. App. 391, 258 S.E. 2d 810 (1979).

Defendant petitioned this court for a writ of certiorari to review the trial proceedings. In the exercise of our discretion, we allowed the petition on 1 April 1980. We also treat the papers filed by defendant as a motion to bypass the Court of Appeals as provided by G.S. 7A-31(a) and allow that motion.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Thomas H. Davis, Jr., for the State.*

*Moses, Diehl & Pate, by Philip A. Diehl, for defendant-appellant.*

BRITT, Justice.

[1]  Defendant contends first that the trial court erred in refusing to submit the lesser included offense of involuntary manslaughter as an alternative verdict. We find no merit in this contention.

The principle of law applicable to this contention is well stated by Justice Exum writing for the court in *State v. Wilkerson*, 295 N.C. 559, 579-80, 247 S.E. 2d 905 (1978), when he quoted from *State v. Wrenn*, 279 N.C. 676, 185 S.E. 2d 129 (1971), as follows:

> "Involuntary manslaughter is the unintentional killing of a human being without either express or implied malice (1) by some unlawful act not amounting to a felony *or naturally dangerous to human life*, or (2) by an act or omission constituting culpable negligence. *State v. Foust*, 258 N.C. 453, 128 S.E. 2d 889; *State v. Honeycutt*, 250 N.C. 229, 108 S.E. 2d 485; *State v. Satterfield*, 198 N.C. 682, 153 S.E. 155. In *Foust*, it is said that ordinarily an unintentional homicide resulting from the reckless use of firearms 'in the absence of intent to discharge the weapon, or in the belief that it is not loaded, and under circumstances *not evidencing a heart devoid of a sense of social duty*, is involuntary manslaughter.' *Id.* at 459, 128 S.E. 2d at 893. (Emphasis added.) When the circumstances do show a heart devoid of a sense of social duty, the homicide cannot be involuntary manslaughter." *State v. Wrenn*, *supra*, 279 N.C. at 687-88, 185 S.E. 2d at 136 (Sharp, J., [later] C.J., dissenting); (*Foust* was also quoted with approval on this point by the majority in *Wrenn*, 279 N.C. at 683, 185 S.E. 2d at 133). . . .

Evidence presented by the state is summarized in pertinent part as follows:

The victim, Eugene (Buddy) Locklear, hereinafter referred to as ·Buddy, began drinking intoxicants around 3:30 p.m. on 1 October 1977. He went to a birthday party around 7:00 p.m. where he continued to drink beer. At around 9:00 p.m., he and others went to Lena Mae McMillan's club in rural Hoke County where he drank more beer.

While on the grounds outside of the club, Buddy engaged in an argument with Bonnie Locklear and slapped her. Lena Mae McMillan, defendant and his brother Bobby went to where Buddy was and a scuffle broke out between Buddy, defendant and Bobby. After the scuffle terminated Lena Mae, Bobby and defendant then went to her trailer which was located on the premises. As they were walking to the trailer, Buddy pulled a pistol and shot twice over their heads, the shots striking near the top of the club building.

A short while later, between five and fifteen minutes, defendant came out of the trailer with a .22 automatic rifle. He was holding the rifle in his right hand and resting it across his left arm which was in a cast. At that time Buddy, according to some witnesses, had put his pistol away; other witnesses testified that he was holding his pistol by his side and he never raised it. Defendant walked up to Buddy and said, "You've got yours, now I've got mine." Thereupon, Buddy grabbed the end of the rifle barrel to push defendant off and the rifle discharged either two or three shots. There was some testimony that after the second shot, Buddy let go of the rifle and had run several feet away when the third shot occurred.

After the shots, Buddy ran away for several feet and fell. Defendant left the scene in an automobile. Police arrived at the club around 11:00 p.m. and found Buddy lying in the highway with no vital signs. No weapon was found on him and three spent .22 caliber shells were found about 30 feet from his body. An autopsy revealed two gunshot entrance wounds in the front of Buddy's body, one in his upper chest which passed through his heart and left lung and another in his upper abdomen which passed through his abdominal aorta. The medical witness stated that, in his opinion, the wounds caused Buddy's death. Both wounds had powder burns around them indicating, in the opinion of the medical witness, that the weapon had been fired from a distance of twelve inches or less. The alcoholic content of the victim's blood was .32.

Defendant made a statement to the local sheriff on 3 October 1977. He indicated that Buddy had shot at him and his brother with a pistol; that someone had handed him a rifle and he had approached Buddy with the rifle pointed to the ground; that Buddy had had his pistol out and had said, "I'll kill you;" and that Buddy had grabbed the rifle barrel "and it fired twice."

Defendant argues that the evidence was sufficient to raise an inference for jury consideration that the shooting was unintentional, and, at most, it resulted from the reckless use of a firearm. We do not find this argument persuasive.

The evidence was overwhelming that after the first altercation between defendant and Buddy, defendant entered the trailer and remained inside for a period of five to fifteen minutes; that he then came out of the trailer with a rifle and walked over to where the victim was, using words which manifested a desire to continue the fight with weapons; and that, at very close range, the rifle went off.

In support of his position, defendant relies on the case of *State v. Fleming*, 296 N.C. 559, 251 S.E. 2d 430 (1979), where we held that the trial judge had properly instructed the jury on the offense of involuntary manslaughter. In *Fleming*, the defendant testified in his own behalf and stated that he had no intention of hurting the victim. Similarly, in *State v. Wrenn, supra*, this court awarded a new trial because of the failure of the trial judge to charge the jury on involuntary manslaughter where the defendant testified that it had been his intention to only scare his wife (the victim) and to "make her do better." In the present case, all of the evidence establishes that defendant returned to the scene of the previous altercation armed and manifesting a desire to resume the affray which had been concluded for some time. These circumstances are sufficient to "show a heart devoid of a sense of social duty." Indeed, in his statement to Sheriff Barrington defendant does not declare that he had no intention of killing Buddy. Defendant's statement that he was pointing the rifle toward the ground at the time he approached Buddy does not establish an inference of a lack of an intention to kill in light of the circumstances which surrounded his advance with a weapon. *Cf., State v. Evans*, 279 N.C. 447, 183 S.E. 2d 540 (1971) (Motion to dismiss charge of attempted armed robbery improperly denied where the evidence was uncontradicted that defendant's companion was carrying a breeched shotgun.)

[2] Defendant contends next that the trial court erred in not instructing the jury that he had a right to act in defense of other persons to protect them from an assault by the victim. This contention has no merit.

The court fully instructed the jury on defendant's right of self-defense and on accident. If there was evidence tending to show that the homicide was committed by defendant in defense of persons other than himself, he was entitled to instructions on that principle of law also. *State v. Hornbuckle*, 265 N.C. 312, 144 S.E. 2d 12 (1965).

Upon a careful review of the record, however, we are unable to find any evidence that would entitle defendant to instructions on the principle of defense of others. At the time defendant, armed with a rifle, approached Buddy, he was no serious threat to anyone. The slapping of Bonnie Locklear had long passed, defendant's brother apparently had left, and Lena Mae evidently was still in her trailer. While there were approximately one hundred people on the premises, no one testified that he or she was afraid of Buddy. The only evidence of a threat by Buddy was defendant's statement that Buddy said, "I'll kill *you*." (Emphasis added.)

We hold that the trial court did not err in failing to instruct the jury on the principle of defense of others.

Finally, defendant contends that the trial court expressed an opinion on the evidence in violation of G.S. 15A-1222. This contention has no merit.

[3] Defendant argues that the court expressed an opinion when, in summarizing the evidence, it gave "only one version of the incident when the state's evidence tended to reflect other and inconsistent factual versions."

While we recognize the principle stated in G.S. 15A-1222 that "the judge may not express during any stage of the trial, any opinion in the presence of the jury on any question of fact to be decided by the jury", we do not think that principle was violated in the case at hand. In reviewing the evidence, the trial judge is not required to give a verbatim recital of the testimony, but only to the extent necessary to explain the application of the law thereto. Slight inaccuracies in the statement of the evidence in the instructions of the court to the jury will not be held for reversible error when not called to the attention of the judge at the time and the charge substantially complies with the re-

quirements of G.S. 15A-1222 (formerly G.S. 1-180). *State v. Sterling,* 200 N.C. 18, 156 S.E. 96 (1930).

The trial judge is not bound to recapitulate all the evidence in his charge to the jury; it is sufficient for him to direct the attention of the jury to the principal questions they have to try, and explain the law applicable thereto. *State v. Thompson,* 226 N.C. 651, 39 S.E. 2d 823 (1946). Furthermore, the court is not required to recapitulate all of the evidence, witness by witness. *State v. Guffy,* 265 N.C. 331, 144 S.E. 2d 14 (1965).

After a careful review of the jury charge in the instant case, we conclude that the trial judge did not express an opinion on the evidence.

We conclude that defendant received a fair trial, free from prejudicial error.

No error.