STATE OF NORTH CAROLINA v. DAVID BUCK

No. 277A83

(Filed 3 April 1984)

**Homicide § 30.3— second degree murder case—error in failure to submit involuntary manslaughter**

In a prosecution for second degree murder in which the case was submitted to the jury on theories of second degree murder, voluntary manslaughter and not guilty by reason of both self-defense and accident, the trial court committed prejudicial error in failing to submit involuntary manslaughter as a possible verdict on the theory that the killing was the result of defendant's reckless but unintentional use of a butcher knife where defendant presented evidence tending to show that deceased, intoxicated and armed with a pocketknife, aggressively advanced first upon a third person and next upon defendant; defendant then picked up the butcher knife to defend himself against deceased's advances; and although defendant was wielding the butcher knife generally to defend against a felonious assault upon him, the actual infliction of the fatal wound was not intentional.

APPEAL by right from a judgment imposing a life sentence entered by *Judge Bruce*, presiding at the 28 February 1983 Session of CRAVEN Superior Court, upon defendant's conviction of second degree murder. *See* N.C. Gen. Stat. § 7A-27(a).

*Rufus L. Edmisten, Attorney General, by Evelyn M. Coman, Assistant Attorney General, for the state.*

*Adam Stein, Appellate Defender, by Lorinzo L. Joyner, Assistant Appellate Defender, for defendant appellant.*

EXUM, Justice.

The question dispositive of this appeal is whether the trial court erred in failing to instruct the jury on involuntary man-

slaughter as a possible verdict. Concluding that it did, we order a new trial.

## I.

The victim, Rudolph Saunders, died on 20 November 1982 from a stab wound to the chest which he suffered during a struggle with defendant in the home of Janie Richardson. Other than the deceased, three people, including defendant, were present when the wound was inflicted. All three testified, describing two conflicting accounts of the deceased's death.

Ms. Richardson, Saunders' girl friend, testified that defendant and his girl friend, Irma Clark, were temporarily living with her on 20 November 1982. That day a disagreement developed between Saunders and defendant regarding some damage defendant had done to Ms. Richardson's apartment. According to Ms. Richardson, she and Saunders walked into the kitchen where defendant was standing near a counter. Defendant picked up a butcher knife off the counter and advanced on Saunders, who was unarmed. Defendant stabbed Saunders in the face, tripped him, and stabbed him several times while Saunders was on the floor. Ms. Richardson told defendant to put the knife down, which he did. Saunders then arose and left the apartment. He died shortly thereafter from the stab wounds.

Defendant's account of the incident was different. According to defendant, Saunders came from the upstairs of the apartment into the kitchen where defendant was standing. Saunders had an open pocketknife in his hand and was acting abusively, threatening to kill Ms. Richardson. Saunders' conduct scared defendant, and defendant told Saunders that he should not harm Ms. Richardson. According to defendant, Saunders came toward him brandishing the open pocketknife. Defendant instinctively grabbed the butcher knife off the counter, hoping to scare Saunders. The two men struggled, each holding a knife. Defendant testified that he threw Saunders to the floor and fell on top of him. Defendant said, "When I fell down the [butcher] knife was in my hand. I must have fell [sic] on top of the knife because when I fell down I noticed the knife had wounded" Saunders. Defendant said he observed the butcher knife sticking in Saunders' left chest, "pulled it out" and "tossed it on the table." He and Saunders continued to struggle on the floor. Finally defendant

told Saunders, "Drop the [pocket] knife and I'll let you up." Saunders said, "Let me up." Defendant said, "Throw the knife down." Saunders dropped the knife and defendant threw it over to the other side of the room by a cabinet in the corner. Saunders then got up and walked out of the apartment. Defendant testified that he did not intentionally stab Saunders with the knife. Defendant learned that Saunders had died later that day.

Ms. Clark also testified. She essentially corroborated defendant's testimony regarding how the struggle ensued and that Saunders was armed with a pocketknife.

Within hours of Saunders' death, a New Bern police officer interviewed Ms. Richardson, went with her to her apartment, searched the kitchen, and retrieved the butcher knife used by defendant. He testified that he did not see a pocketknife. The day after the killing, Ms. Richardson and her son, James Nelson, returned to the apartment and went into the kitchen. Nelson testified that he found an open pocketknife "jammed against the cabinet" on the kitchen floor underneath the cabinet's overhanging ledge. The police eventually came and seized the pocketknife.

Other evidence showed that on autopsy Saunders' blood alcohol content was 250 milligrams percent which would have produced a breathalyzer reading of .25 percent. The autopsy also revealed Saunders had two superficial lacerations—one on his forehead one inch long and another on his neck three-eighths of an inch long—in addition to the fatal stab wound in his chest.

The jury found defendant guilty of second degree murder.

## II.

Defendant assigns two errors to the trial court's charge to the jury, one error to the prosecutor's closing argument, and one error to the sentencing hearing regarding the finding of certain aggravating circumstances. Because we conclude that the trial court committed reversible error in failing to submit involuntary manslaughter as a possible verdict, we find it unnecessary to reach defendant's other assignments of error inasmuch as they are not likely to arise on a new trial.

At a conference between court and counsel on jury instructions held at the close of evidence and before final arguments,

defendant, through counsel, requested that the trial court charge only on second degree murder and not guilty by reason of self-defense. The court concluded that a charge on voluntary manslaughter should be given. Defendant then requested that a charge on involuntary manslaughter also be given. The trial court, after considerable discussion with counsel, finally determined that it would not submit involuntary manslaughter as an alternative verdict. Defendant excepted. The case was submitted to the jury on theories of second degree murder, voluntary manslaughter and not guilty by reason of both self-defense and accident.

The question whether involuntary manslaughter should have been submitted in this case is controlled by *State v. Wallace*, 309 N.C. 141, 305 S.E. 2d 548 (1983), and *State v. Fleming*, 296 N.C. 559, 251 S.E. 2d 430 (1979). These cases, among many others, support the proposition that involuntary manslaughter can be committed by the wanton and reckless use of a deadly weapon such as a firearm (*Wallace*) or a knife (*Fleming*). In *Fleming* the state's evidence tended to show that defendant intentionally stabbed deceased to death with a knife. Defendant's evidence, on the other hand, tended to show the deceased was stabbed while she and defendant struggled with a knife. Defendant said he did not intentionally stab deceased. This Court concluded that defendant's testimony "would support a finding of either (1) an accidental killing or (2) perhaps an unintentional homicide resulting from the reckless use of a deadly weapon under circumstances not evidencing a heart devoid of a sense of social duty." 296 N.C. at 564, 251 S.E. 2d at 433.[1] In *Wallace* the state's evidence tended to show an intentional, malicious shooting of the deceased. Defendant's evidence, however, tended to show that defendant grabbed a gun from the deceased's hand and as he was attempting to throw it across the room it fired accidentally, the bullet striking and killing the deceased. The trial court there submitted possible verdicts of guilty of second degree murder, guilty of voluntary manslaughter, or not guilty by reason of both self-defense and accident. The jury convicted Wallace of second degree murder. This

---

1. A killing resulting from an act which is so reckless that it evidences a heart devoid of social duty is second degree murder, even though the killing be unintentional. *State v. Wilkerson*, 295 N.C. 559, 247 S.E. 2d 905 (1978); *State v. Wrenn*, 279 N.C. 676, 185 S.E. 2d 129 (1971).

Court held it was error warranting a new trial for the trial court not to submit involuntary manslaughter as an alternative verdict. We concluded expressly that the error was not cured by defendant's having been found guilty of second degree murder nor by the judge's instructions on accidental killing.

In the present case defendant's evidence, if believed, could support a verdict of involuntary manslaughter on the theory that the killing was the result of his reckless, but unintentional use of the butcher knife. In essence, defendant's position in the case is that the killing was unintentional and accidental for which no criminal responsibility should attach. At most, the killing was the result of his reckless use of the knife which would amount to involuntary manslaughter. If, however, the jury should conclude that he intentionally wielded the knife, then it should acquit him on the grounds of self-defense. We think all of these alternatives are supported by the evidence in addition to second degree murder and voluntary manslaughter.

This case differs from *Fleming* where we held there was no evidence of self-defense or voluntary manslaughter. In *Fleming* defendant's evidence tended to show that he chased the deceased who was running away from him, unarmed and naked; he picked up a knife which the deceased had dropped during her flight; he caught the deceased, they struggled with the knife, and the fatal stabbing occurred during the struggle. The Court said, "Defendant in his testimony makes no contention that he cut the deceased in the heat of passion or in self-defense." 296 N.C. at 563-64, 251 S.E. 2d at 433. This case also differs from *Wallace* where we also held the evidence would not support instructions on voluntary manslaughter or self-defense. In *Wallace* defendant's evidence tended to show that he was in the act of throwing a gun across the room when it accidentally discharged, killing deceased.

In the instant case defendant's evidence tends to show that the fatal stabbing occurred during a struggle in which both deceased and defendant were armed with knives and in which deceased so armed aggressively advanced first upon Ms. Richardson and next upon defendant. Deceased, who "was very intoxicated . . . and acted like he was going out of his head or something," told Ms. Richardson, "I ought to kill you"; he told defendant, "Well, I [sic] f--k you up man." Defendant also testified, "I was

scared . . . I didn't know what [the deceased] was going to do." Defendant then picked up the butcher knife to defend himself against deceased's advances. Although defendant was wielding the butcher knife generally to defend against a felonious assault upon him, the actual infliction of the fatal wound, according to defendant, was not intentional.[2]

While we find it unnecessary to address defendant's other assignments of error, we reiterate that it is important for the trial court to include the possible verdict of not guilty by reason of self-defense in its final mandate to the jury.

> The failure of the trial judge to include not guilty by reason of self-defense as a possible verdict in his final mandate to the jury was not cured by the discussion of the law of self-defense in the body of the charge. By failing to so charge, the jury could have assumed that a verdict of not guilty by reason of self-defense was not a permissible verdict in the case.

*State v. Dooley,* 285 N.C. 158, 165-66, 203 S.E. 2d 815, 820 (1974).

Concluding that the trial court committed reversible error in failing to charge the jury on involuntary manslaughter, we order a

New trial.

---

2. This case also differs from *State v. Ray,* 299 N.C. 151, 261 S.E. 2d 789 (1980), where we held it reversible error to submit involuntary manslaughter as a permissible verdict. In *Ray* all the evidence demonstrated that defendant intentionally shot deceased after deceased had shot and wounded defendant's brother and had threatened to shoot defendant. There was no evidence of an unintentional shooting. The entire defense was self-defense.