STATE OF NORTH CAROLINA v. DARRELL JAY LYTTON, JR.

No. 299A86

(Filed 5 May 1987)

1. **Homicide § 28.8— first degree murder—requested instruction on accident—not supported by evidence**

   The defendant in a first degree murder prosecution was not entitled to an instruction on the defense of accident where the evidence was uncontroverted that defendant was in a car driving away from the scene when decedent called out; defendant ordered the driver to stop; left the car with a loaded pistol in his hand; approached the defendant; and the pistol was in defendant's hand when three bullets were fired from it, two of which entered the decedent's body. Defendant voluntarily placed himself in a volatile situation and the uncontradicted facts establish at least the crime of involuntary manslaughter.

2. **Homicide § 30.3— first degree murder—failure to submit involuntary manslaughter—error**

   A defendant in a first degree murder prosecution was entitled to have the lesser included offense of involuntary manslaughter submitted to the jury where defendant claimed that he fired the first shot at the ground as a warning to decedent to keep his distance; decedent continued to approach defendant and a struggle ensued; the second and third shots were fired during the

struggle; defendant testified that he did not intend to pull the trigger, did not aim the pistol, and did not form the intent to shoot the victim; and events leading up to the shooting progressed very rapidly without a delay between the initial fight and the ultimate shooting. Defendant's conduct demonstrated culpable negligence necessary to support a conviction for involuntary manslaughter, but did not evince either a heart devoid of social responsibility or a depravity of mind and a disregard for human life.

Justice WEBB dissenting.

DEFENDANT appeals as of right from the imposition of a life sentence upon his conviction of second-degree murder at the 13 January 1986 Criminal Session of the Superior Court, GASTON County, before *Burroughs, J.* Heard in the Supreme Court 10 March 1987.

*Lacy H. Thornburg, Attorney General, by Laura E. Crumpler, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender by Louis D. Bilionis, Assistant Appellate Defender, for defendant-appellant.*

MEYER, Justice.

The evidence presented in this case tended to show that in the late evening of 2 August 1985, defendant and three of his friends were riding around Gastonia in defendant's car. Rebecca Burgess, defendant's girlfriend, was driving; defendant was riding in the front passenger's seat. At some point during the ride, defendant took his loaded pistol out of the glove compartment of the car and showed it to Ricky Connard, who was riding in the rear. He then placed the pistol on the seat next to him.

Sometime after 11:00 p.m., the car containing defendant was proceeding along Church Street. Decedent Steve Armstrong and his wife Jamie were walking on Church Street heading for their home. Both were walking in the vehicle lanes, the decedent in the right lane, and his wife in the left. As the car driven by Burgess approached the two pedestrians, Steve Armstrong stood in the middle of the pavement facing the car. He had been drinking heavily. The driver, Burgess, yelled an obscenity at Armstrong and told him to move out of the way. Rather than doing so, decedent dropped a twelve-pack of beer he had been carrying and approached the car. As Burgess started to drive off, Armstrong hit

the window of the car. According to Burgess, the defendant then told her to stop the car. She stopped the car and backed up toward Armstrong. At this point, the defendant got out of the car with his pistol and faced the intoxicated decedent, who was moving toward the car. Defendant fired one shot into the ground. Armstrong, who continued to walk toward the car, got to the car and a struggle ensued. Two additional shots were fired, either during the fight or shortly thereafter. Armstrong was killed by two shots which struck him in the abdomen.

The trial judge instructed the jury on first-degree murder, second-degree murder, and voluntary manslaughter, as well as on self-defense. The defendant had requested an instruction on involuntary manslaughter and on the defense of accident. Both of these requests were denied. The jury found defendant guilty of second-degree murder and rejected the defense of self-defense. The trial judge found as an aggravating factor that the defendant had previously been convicted of criminal offenses punishable by more than sixty days confinement and as a mitigating circumstance that the defendant voluntarily acknowledged wrongdoing at an early stage of the criminal process. The court determined that the aggravating factor outweighed the mitigating circumstance and sentenced the defendant to life imprisonment.

Defendant argues that he was entitled to an instruction on the defense of accident and to the lesser included offense of involuntary manslaughter. We hold that there was insufficient evidence to support an instruction on the defense of accident. However, there was evidence which, if believed by the jury, could have resulted in a conviction of involuntary manslaughter. We accordingly reverse the defendant's conviction and remand the case for a new trial.

[1] We first consider the defendant's contention that it was error for the trial judge to deny his request for the Pattern Jury Instruction on Accident. This instruction reads:

Where evidence is offered that tends to show that the victim's death was accidental, and you find that the killing was in fact accidental, the defendant would not be guilty of any crime, even though his acts were responsible for the victim's death. A killing is accidental if it is unintentional, occurs during the course of lawful conduct, and does not in-

volve culpable negligence. A killing cannot be [premeditated] (or) [intentional] (or) [culpably negligent] if it was the result of an accident. When the defendant asserts that the victim's death was the result of an accident, he is, in effect, denying the existence of those facts which the State must prove beyond a reasonable doubt in order to convict him. Therefore, the burden is on the State to prove those essential facts and in so doing, disprove the defendant's assertion of accidental death. The State must satisfy you beyong [sic] a reasonable doubt that the victim's death was not accidental before you may return a verdict of guilty.

*Note Well. Add to final mandate at end:*

Now members of the jury, bearing in mind that the burden of proof rests upon the State to establish the guilt of the defendant beyond a reasonable doubt, I charge that if you find from the evidence that the killing of the deceased was accidental, that is, that the victim's death was brought about by an unknown cause or that it was from an unusual or unexpected event from a known cause, and you also find that the killing of the deceased was unintentional, that at the time of the homicide the defendant was engaged in the performance of a lawful act without any intention to do harm and that he was not culpably negligent; if you find these to be the facts, remembering that the burden is upon the State, then I charge you that the killing of the deceased was a homicide by misadventure and if you so find, it would be your duty to render a verdict of not guilty as to this defendant.

N.C.P.I.—307.10, "Accident (Defense to Homicide Charge, Except Homicide Committed During Perpetration of a Felony)" (Replacement May 1986) (footnote omitted). Defendant points to testimony by some eyewitnesses that the shots were fired as defendant and decedent were struggling with each other and to his own testimony that he did not intend to fire the pistol, and argues that this testimony was sufficient to support such an instruction. We disagree.

The defense of accident is triggered in factual situations where a defendant, without premeditation, intent, or culpable negligence, commits acts which bring about the death of another. *State v. Morgan,* 299 N.C. 191, 261 S.E. 2d 827 (1980). It is not an

affirmative defense, but acts to negate the *mens rea* element of homicide. *State v. Harris*, 289 N.C. 275, 221 S.E. 2d 343 (1976). The jury in the present case found the defendant not guilty of first-degree murder, but guilty of second-degree murder. Thus, while the jury concluded that defendant acted without premeditation and deliberation in order to convict defendant of second-degree murder, it necessarily found that defendant acted intentionally in causing the death of Steve Armstrong. Although, as we discuss below, the jury could have found that defendant acted only with culpable negligence, all of the evidence in the case was that the defendant acted with at least that degree of criminality.

The evidence was uncontroverted that defendant was in a car driving away from the scene when the decedent called out. At that point defendant ordered the driver to stop, left the safety of the car with a loaded pistol in his hand, and approached the decedent. The evidence is also undisputed that the pistol was in the hand of the defendant when three bullets were fired from it, two of which entered the decedent's body. Defendant thus voluntarily placed himself in this volatile situation and under the facts, which are uncontradicted by anything in the record before us, established at least the crime of involuntary manslaughter. The fact that the defendant claims now that he did not intend the shooting does not cleanse him of culpability and thus give rise to a defense of accident. We find no error in the trial court's denial of defendant's request for an instruction on accident.

[2] We are persuaded, however, that the defendant was entitled to have the jury consider whether he was guilty only of the offense of involuntary manslaughter. Involuntary manslaughter is the unlawful killing of a human being without premeditation, deliberation, intention, or malice. *State v. Foust*, 258 N.C. 453, 128 S.E. 2d 889 (1963). An unintentional killing with a firearm resulting from culpable negligence is ordinarily involuntary manslaughter unless the defendant acts with "a heart devoid of a sense of social duty," *id.* at 459, 128 S.E. 2d at 893, or with a "depravity of mind and disregard for human life," *State v. Wilkerson*, 295 N.C. 559, 582, 247 S.E. 2d 905, 919 (1978).

It is reversible error for the trial court not to submit to the jury such lesser included offenses to the crime charged as are

supported by the evidence. *State v. Riera*, 276 N.C. 361, 172 S.E. 2d 535 (1970). *Cf. State v. Johnson*, 317 N.C. 193, 344 S.E. 2d 775 (1986) (no evidence to support lesser included offense). Defendant was charged with first-degree murder. Involuntary manslaughter is a lesser included offense of first-degree murder. *State v. Greene*, 314 N.C. 649, 336 S.E. 2d 87 (1985). Our inquiry, then, is whether there was evidence from which a jury could reasonably have found the defendant guilty only of this lesser offense.

The defendant testified to the events surrounding the firing of the three shots. He claimed that the first shot was fired at the ground as a warning to Armstrong to keep his distance. The warning was apparently to no avail, because the victim continued to approach defendant and a struggle ensued. The second and third shots were, according to defendant, fired during the struggle. As to these shots, defendant testified that he did not intend to pull the trigger, did not aim the pistol, and did not form the intent to shoot Steve Armstrong.

The State first argues that defendant acted intentionally. Although the defendant testified that he did not intend to shoot Armstrong, he did admit that his finger was on the trigger of the pistol when it went off. Moreover, the State points to testimony from eyewitnesses that two of the shots were fired, not during a struggle, but as the victim was "trying to get away." The State argues that we should find the evidence insufficient to show that the killing was unintentional. We disagree. Conflicts in the evidence are for the jury to resolve, not this Court. *State v. Fleming*, 296 N.C. 559, 251 S.E. 2d 430 (1979). As there was competent evidence that the killing was unintentional, we cannot say as a matter of law that the killing was otherwise.

The State points to evidence that the defendant was riding around town with a loaded pistol and that he had voluntarily left the car and faced an obviously intoxicated, angry, and much larger man. By placing himself in this situation, argues the State, the defendant showed a "depravity of mind and disregard for human life" that precludes the submission of involuntary manslaughter as a possible verdict. *State v. Wilkerson*, 295 N.C. 559, 582, 247 S.E. 2d 905, 918 (1978). The State argues that in order to gauge the defendant's culpability, we must look not only at the defendant's intentions as the shots were fired, but also at his con-

duct prior to the fatal event. *State v. Wrenn*, 279 N.C. 676, 684, 185 S.E. 2d 129, 134 (1971) (Sharp, J., dissenting).

The State cites *State v. Oxendine*, 300 N.C. 720, 268 S.E. 2d 212 (1980), for the proposition that defendant's conduct evinced a "heart devoid of social duty." In that case, the evidence was that the defendant and the victim engaged in an altercation. The defendant left the scene and returned with a rifle. Another fight broke out, during which two shots were fired from defendant's rifle. Because the defendant had previously fought with the victim and cooled off before "manifesting a desire to resume the affray," *id.* at 724, 268 S.E. 2d at 215, we found sufficient evidence that the defendant had "a heart devoid of a sense of social duty." *Id.* We accordingly affirmed the trial court's decision not to submit involuntary manslaughter to the jury.

We find the case *sub judice* to be distinguishable from *Oxendine*. Unlike the defendant in that case, defendant here testified that he had no intention of firing the shots that killed Armstrong. Moreover, the events leading up to the shooting here progressed very rapidly, without a delay between the initial fight and the ultimate shooting. We conclude under the facts of this case that defendant's conduct demonstrated culpable negligence necessary to support a conviction for involuntary manslaughter. Because the defendant's conduct did not evince either a heart devoid of social responsibility or a depravity of mind and a disregard for human life, we hold that it was error for the trial court not to have submitted involuntary manslaughter to the jury.

This case is similar to *State v. Wrenn*, 279 N.C. 676, 185 S.E. 2d 129 (1971). There, we reversed a defendant's conviction of second-degree murder because the trial court did not submit involuntary manslaughter to the jury. The evidence in that case was that the defendant fired three shots during a chase and altercation with his wife. Two shots were intentionally fired, but were intended to and did in fact miss the victim. The third shot, which was, according to the defendant, unintentionally fired during a struggle, killed her. We held that the evidence could have supported a verdict of guilty on a charge of involuntary manslaughter and that the evidence did not show that defendant had "a heart devoid of a sense of social duty." *Id.* at 683, 185 S.E. 2d at 133 (quoting *State v. Foust*, 258 N.C. at 459, 128 S.E. 2d at 893).

We hold that in the present case there was evidence that would have supported a verdict of guilty of involuntary manslaughter. *See State v. Buck,* 310 N.C. 602, 313 S.E. 2d 550 (1984); *State v. Stimpson,* 279 N.C. 716, 185 S.E. 2d 168 (1971). Defendant is therefore entitled to a new trial with the jury properly instructed on involuntary manslaughter. *State v. Wrenn,* 279 N.C. 676, 185 S.E. 2d 129.

New trial.

Justice WEBB dissenting.

I dissent. I do not believe, for the reasons stated in my concurring opinion in *State v. Lane,* 77 N.C. App. 741, 746, 336 S.E. 2d 410, 413 (1986), that the defendant was indicted for involuntary manslaughter. For that reason I would hold it was not error not to submit involuntary manslaughter to the jury.