NO. COA13-495

NORTH CAROLINA COURT OF APPEALS

Filed: 7 January 2013

STATE OF NORTH CAROLINA

   v.

ADRIAN TAREL EPPS,
   Defendant.

Gaston County
No. 11 CRS 7113

Appeal by defendant from judgment entered 25 September 2012 by Judge Hugh B. Lewis in Gaston County Superior Court. Heard in the Court of Appeals 26 September 2013.

> *Attorney General Roy Cooper, by Special Deputy Attorney General Amar Majmundar, for the State.*
>
> *Michael E. Casterline for defendant-appellant.*

STEELMAN, Judge.

Where the evidence at trial showed that defendant acted voluntarily in stabbing McGill, resulting in his death, the trial court did not err in declining to instruct the jury on involuntary manslaughter.

## I. Factual and Procedural Background

On 6 May 2011, Adrian Tarel Epps (defendant) was hosting a social event at his house. One of the guests was defendant's cousin, who brought her boyfriend, Antwan McGill (McGill). A fight

occurred in the yard between defendant and McGill, and defendant was beaten by McGill. Defendant returned to the house by the screen door to the kitchen. McGill followed defendant to the house. When McGill approached the screen door, defendant stabbed him through the door. McGill was dead on arrival at the hospital emergency room. The coroner found McGill's death to have resulted from a single stab wound.

Defendant was charged with first-degree murder. At the jury instruction conference, defendant requested an instruction on the lesser offense of involuntary manslaughter. The trial court denied that request. The trial court instructed the jury on first-degree murder, second-degree murder, and voluntary manslaughter, as well as the defenses of self-defense and the castle doctrine. On 25 September 2012, the jury found defendant guilty of voluntary manslaughter. The jury also found the existence of two aggravating factors. The trial court found defendant to be a prior felony record level IV, and sentenced defendant to an aggravated range sentence of 121-155 months imprisonment.

Defendant appeals.

## II. Involuntary Manslaughter

In his sole argument on appeal, defendant contends that the trial court erred in refusing to instruct the jury on the lesser offense of involuntary manslaughter. We disagree.

## A. Standard of Review

"[Arguments] challenging the trial court's decisions regarding jury instructions are reviewed *de novo* by this Court." *State v. Osorio*, 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009). "The prime purpose of a court's charge to the jury is the clarification of issues, the elimination of extraneous matters, and a declaration and an application of the law arising on the evidence." *State v. Cameron*, 284 N.C. 165, 171, 200 S.E.2d 186, 191 (1973), *cert. denied*, 418 U.S. 905, 41 L. Ed. 2d 1153 (1974). "[A] trial judge should not give instructions to the jury which are not supported by the evidence produced at the trial." *Id.* "Where jury instructions are given without supporting evidence, a new trial is required." *State v. Porter*, 340 N.C. 320, 331, 457 S.E.2d 716, 721 (1995).

## B. Analysis

"An instruction on a lesser-included offense must be given only if the evidence would permit the jury rationally to find defendant guilty of the lesser offense and to acquit him of the

greater." *State v. Millsaps*, 356 N.C. 556, 561, 572 S.E.2d 767, 771 (2002).  In the instant case, defendant contends that the evidence at trial would have permitted the jury to find defendant guilty of involuntary manslaughter and to acquit him of the other homicide charges.

"The elements of involuntary manslaughter are: (1) an unintentional killing; (2) proximately caused by either (a) an unlawful act not amounting to a felony and not ordinarily dangerous to human life, or (b) culpable negligence." *State v. Fisher*, ___ N.C. App. ___, ___, 745 S.E.2d 894, 901 (2013) (quoting *State v. Hudson,* 345 N.C. 729, 733, 483 S.E.2d 436, 439 (1997)).  Thus, for the jury to be given an instruction on involuntary manslaughter, there must have been evidence presented to show that (1) defendant lacked intent, and that (2) the action causing McGill's death either (a) did not amount to a felony and was not ordinarily dangerous to human life, or (b) was the result of culpable negligence.

At trial, the evidence presented was that defendant fought with McGill, and that defendant retreated to the kitchen.  The evidence further showed that defendant stabbed McGill through the screen door, that the knife had a 10-12 inch blade, that defendant's arm went through the screen door up to the elbow, and

that the stab wound pierced McGill's lung and nearly pierced his heart, and was approximately four and one-half inches deep. Defendant contends that he was intoxicated and barely aware of his actions; that he was afraid for his life and acting to fend off an attack; and that his actions were reckless but not intended to cause death.

Defendant relies on *State v. Debiase*, 211 N.C. App. 497, 711 S.E.2d 436, *disc. review denied,* 365 N.C. 335, 717 S.E.2d 399 (2011). In *Debiase*, defendant and the victim, guests at a party, got into an altercation, which concluded with defendant striking the victim with a bottle, inflicting an injury from which the victim eventually died. We held that:

> despite the fact that Defendant acted intentionally at the time that he struck Mr. Lien with the bottle, the evidence contained in the present record is susceptible to the interpretation that, at the time that he struck Mr. Lien, Defendant did not know and had no reason to believe that the bottle would break or that the breaking of the bottle would inflict a fatal wound to Mr. Lien's neck. Death resulting from such a series of events would, under the previous decisions of this Court and the Supreme Court, permit an involuntary manslaughter conviction.

*Debiase*, 211 N.C. App. at 506, 711 S.E.2d at 442. We held that the trial court erred by declining to instruct the jury on the

lesser-included offense of involuntary manslaughter, and remanded for a new trial.

The facts of the instant case are distinct from those in *Debiase*. In *Debiase*, defendant was holding the bottle during the fight. As a result, the jury was permitted to consider the possibility that his use of the bottle was not intentional. In the instant case, however, defendant was not armed with the knife during the fight, nor was defendant involved in an altercation at the time of the fatal stabbing. Sometime after the fight had ended, defendant was in the kitchen, inside of the house, when McGill approached the screen door. Defendant consciously grabbed the knife, which he had not been previously holding, and stabbed McGill through the screen door.

Defendant cites us to numerous other cases with fact patterns similar to the facts in *Debiase*, reaching the same result. In each of those cases, a defendant instinctively or reflexively lashed out, involuntarily resulting in the victim's death. In the instant case, however, defendant's conduct was entirely voluntary. The evidence in the record shows that defendant's conduct was intentional, and that the stabbing was not an action which was (a) not a felony, or (b) resulting from culpable negligence. Based

upon our review of the record, we see no evidence which would have merited an instruction on involuntary manslaughter.

We hold that the trial court did not err by refusing to instruct the jury on the lesser-included offense of involuntary manslaughter.

NO ERROR.

Judge BRYANT concurs.

Judge HUNTER, ROBERT C. dissenting.

STATE OF NORTH CAROLINA,

    v.
                                 Gaston County
                                 No. 11 CRS 7113

ADRIAN TAREL EPPS,
    Defendant.


HUNTER, Robert C., Judge, dissenting.


Based on decisions by this Court and our Supreme Court and taking the evidence in the light most favorable to defendant, I believe the evidence would permit a reasonable jury to find defendant guilty of involuntary manslaughter. Consequently, I would conclude that the trial court committed reversible error in failing to charge the jury on involuntary manslaughter and that defendant is entitled to a new trial.

**Background**

On 6 May 2011, Adrian Epps ("defendant") and his girlfriend, Jamie Vittatoe ("Ms. Vittatoe"), decided to have a small get-together at their home near the town of Stanley, North Carolina. They invited defendant's cousin Anitra Adams ("Ms. Adams") who invited her boyfriend of two months Antwan Rashard McGill ("Mr. McGill"). After Ms. Adams and Mr. McGill arrived, around 8 or 9 that night, Ms. Adams asked if defendant had any orange juice to

mix with vodka. Defendant replied that they did not; instead, he cut up lime wedges for her to squeeze into her drinks. Over the course of the evening, the couples drank alcohol and smoked marijuana. While no one was able to definitively establish how much the parties drank, several of the witnesses testified that both defendant and Mr. McGill were quite intoxicated. In fact, one witness testified that defendant was so intoxicated that he was "stumbling" around and fell down twice. Moreover, several witnesses claimed that Mr. McGill got sick in the bathroom from consuming too much alcohol. According to the postmortem toxicology report, Mr. McGill had a blood alcohol level of .16 and a small amount of Xanax in his system.

At some point during the evening, defendant and Mr. McGill began arguing; the witnesses provided contradictory accounts of the altercation. Defendant contended that the argument started when Mr. McGill made a derogatory comment about Ms. Vittatoe. Defendant and Mr. McGill went outside where a physical fight ensued. Defendant claimed that Mr. McGill pulled his legs out from under him and beat him so severely that defendant passed out twice. When defendant woke up the first time during the fight, he felt "dizzy." At this point, while defendant was still on the ground, Mr. McGill kicked him in the face, and defendant stated

that it felt like his face "exploded" and his ears began ringing. When he woke up the second time, defendant alleged that he saw Ms. Adams and Mr. McGill sitting in Ms. Adams's car in the driveway. Defendant went back inside his house through a screen door located off a side porch. Defendant stated that he was in severe pain, his head was "killing" him, he felt lightheaded, and his vision was blurry. Defendant left the outside door propped open because he believed Mr. McGill and Ms. Adams were leaving. When he entered the kitchen, defendant and Ms. Vittatoe began cleaning the blood out of his mouth. Defendant heard footsteps outside on his driveway. He turned and saw Mr. McGill coming toward the screen door. Fearing that Mr. McGill was coming back to hurt him further or to harm Ms. Vittatoe, defendant ran to the screen door and held it shut. During the struggle, defendant claimed he heard Ms. Adams yell something about a gun. At this point, defendant grabbed the knife he had used earlier to cut limes, turned, and stabbed once through the closed screen door. Defendant testified that he "wasn't trying to pay attention to exactly where [he] might hit [Mr. McGill] at, or how hard [he] might've swung the knife, or anything like that." Defendant went on to allege:

> I wasn't trying to gauge I'm going to hit [Mr. McGill] here with [the knife], I'm going to hit him there with it, I'm going to use this much force, I'm not going to use that much

force, I'm going to pull back at this moment of that moment. None of that was going through my head. Only thing was going through my head was I need to protect myself. I was in fear for my life that it was going to either be my life or his life.

Ms. Adams and Devan Williams, a friend of Mr. McGill's, took Mr. McGill to the hospital where he was pronounced dead in the emergency room. According to the pathologist who performed the autopsy, Mr. McGill died as a result of excessive bleeding from a single stab wound in his upper chest.

At trial, defendant requested the trial court instruct on involuntary manslaughter. However, the trial court denied his request because involuntary manslaughter did not "apply" and noted defendant's objection for purposes of an appeal. The jury was instructed on first-degree murder, second-degree murder, voluntary manslaughter, and the defenses of self-defense and defense of habitation. The jury found defendant guilty of voluntary manslaughter. The trial court sentenced defendant to a minimum of 121 months to a maximum of 155 months imprisonment. Defendant appealed.

## Argument

Defendant's sole argument on appeal is that the trial court committed reversible error by refusing to instruct the jury on involuntary manslaughter. Specifically, defendant contends that

although there was contradictory evidence presented at trial, there was sufficient evidence presented to permit the jury to find him guilty of involuntary manslaughter.   Taking the evidence in a light most favorable to defendant, I agree.

"[Arguments] challenging the trial court's decisions regarding jury instructions are reviewed de novo by this Court." *State v. Osorio*, 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009).  "An instruction on a lesser-included offense must be given only if the evidence would permit the jury rationally to find defendant guilty of the lesser offense and to acquit him of the greater."  *State v. Millsaps*, 356 N.C. 556, 561, 572 S.E.2d 767, 771 (2002).  "In determining whether the evidence is sufficient to support the submission of the issue of a defendant's guilt of a lesser included offense to the jury, courts must consider the evidence in the light most favorable to the defendant."  *State v. Debiase*, 211 N.C. App. 497, 504, 711 S.E.2d 436, 441 (internal quotation marks omitted), *disc. review denied*, 365 N.C. 335, 717 S.E.2d 399 (2011).  Our Supreme Court has noted that "[c]onflicts in the evidence are for the jury to resolve, not this Court" when deciding whether the trial court erred in not submitting an instruction on involuntary manslaughter.  *State v. Lytton*, 319 N.C. 422, 427, 355 S.E.2d 485, 488 (1987).  "It is reversible error

for the trial court to fail to instruct on a lesser offense when evidence has been introduced which supports the finding of such a lesser offense." *State v. Fisher*, 318 N.C. 512, 524, 350 S.E.2d 334, 341 (1986).

Involuntary manslaughter is a lesser included offense of second-degree murder and voluntary manslaughter. *State v. Thomas*, 325 N.C. 583, 591, 386 S.E.2d 555, 559 (1989). Unlike voluntary manslaughter which requires that a defendant have an intent to kill, *see State v. Wilkerson*, 295 N.C. 559, 579, 247 S.E.2d 905, 916 (1978), "involuntary manslaughter can be committed by the wanton and reckless use of a deadly weapon such as a firearm [*see State v. Wallace*, 309 N.C. 141, 305 S.E.2d 548 (1983)] or a knife [*see State v. Fleming*, 296 N.C. 559, 251 S.E.2d 430 (1979)][,]" *State v. Buck*, 310 N.C. 602, 605, 313 S.E.2d 550, 552 (1984).

Here, the evidence, when taken in the light most favorable to defendant, could support a verdict of involuntary manslaughter based on the theory that defendant killed Mr. McGill as a result of his reckless use of the knife. At trial, defendant's own testimony establishes that he was not trying to intentionally inflict a fatal wound; specifically, defendant testified that he was not aiming at any particular area on Mr. McGill's body or consciously using any specific amount of force. Instead, his

testimony indicates that he was acting instinctively and reflexively when he grabbed the knife, turned, and made a single stabbing motion toward Mr. McGill through a closed screen door. While it is uncontroverted that defendant intentionally used the knife, our Supreme Court has made it clear that the element of intent for purposes of manslaughter is whether the defendant intended to inflict a fatal wound, not whether the use of the weapon was intentional. *See Buck*, 310 N.C. at 607, 313 S.E.2d at 553 (concluding that the trial court erred in not submitting the involuntary manslaughter instruction when "[the] defendant was wielding the butcher knife generally to defend against a felonious assault upon him, [but] the actual infliction of the fatal wound, according to [the] defendant, was not intentional"). While the testimony of other witnesses contradicts defendant's testimony concerning his lack of intent to kill Mr. McGill, their testimony does not matter because the trial court must consider the evidence in a light most favorable to defendant. Thus, the conflict in the evidence was for the jury to resolve, not the trial court by refusing to submit the lesser included offense to the jury. Consequently, I believe that defendant's own description of the events coupled with the fact that Mr. McGill was struck only once through a closed screen door during the altercation was enough to

warrant the submission of the involuntary manslaughter instruction to the jury.

Unlike the majority, I believe the facts of these case are similar to those of *Debiase*. There, during an altercation, the defendant struck the victim with a beer bottle; although several of the witnesses claimed that the defendant struck him multiple times, defendant alleged to only have hit the victim once. *Debiase*, 211 N.C. App. at 499-501, 711 S.E.2d at 438-39. The victim died as a result of massive blood loss from a "gaping wound" on his neck. *Id*. at 498, 711 S.E.2d at 437-38. The victim also suffered a second, superficial wound on his head. *Id*. The pathologist who conducted the autopsy contended that both wounds could only have come from a broken beer bottle. *Id*. This suggested that the beer bottle broke at some point during the defendant's altercation with the victim.

At trial, the court refused to give an instruction on involuntary manslaughter. This Court reversed, concluding that the evidence, when taken in the light most favorable to the defendant, had the tendency to show that the defendant did not intend to kill or seriously injure the victim. *Id*. at 504, 711 S.E.2d at 441. In order to reach its conclusion, the Court

reviewed numerous decisions of both this Court and our Supreme Court noting, in pertinent part, that:

> despite the fact that [the] [d]efendant acted intentionally at the time that he struck [the victim] with the bottle, the evidence contained in the present record is susceptible to the interpretation that, at the time that he struck [the victim], [the] [d]efendant did not know and had no reason to believe that the bottle would break or that the breaking of the bottle would inflict a fatal wound to [the victim's] neck.

*Id.*

Like *Debiase*, I believe that the evidence in the present case was sufficient to support a reasonable conclusion that Mr. McGill's death resulted from defendant's reckless use of the knife. It is uncontroverted that defendant and Mr. McGill had been engaged in a physical altercation which resulted after both had been consuming alcohol and drugs for several hours. Defendant's own testimony suggests that he reacted instinctively when he believed Mr. McGill was coming to hurt either himself or Ms. Vittatoe. In his testimony, defendant claimed that he struck at Mr. McGill without any conscious effort to hit him in any particular way. Moreover, the way in which he wounded Mr. McGill supports his contention that he was acting unintentionally. During the struggle, defendant swung the knife only once through a closed screen door. As a result, I believe the evidence in the present case was

"susceptible," *Debiase*, 211 N.C. App. at 504, 711 S.E.2d at 441, to an interpretation that defendant did not intend to inflict a fatal wound when he swung once at Mr. McGill with the knife.

Moreover, I disagree with the majority's conclusion that *Debiase* is distinguishable because: (1) the altercation between Mr. McGill and defendant was over by the time defendant stabbed Mr. McGill; and (2) defendant had not been holding the knife when the fight began but, instead, grabbed it from the table once they were struggling at the door. While the fight between defendant and Mr. McGill had momentarily ceased at the time defendant entered his kitchen and began cleaning his wounds, Mr. McGill resumed his attack by trying to come in defendant's home. In addition, while the majority is correct that the *Debiase* defendant had the bottle in his hand prior to the altercation intensifying, *id*. at 499-502, 711 S.E.2d at 438-440, our Supreme Court has concluded that a defendant who grabs a weapon during the fight may still be entitled to the involuntary manslaughter instruction. *See Buck*, 310 N.C. at 603-604, 313 S.E.2d at 551-52 (holding that a defendant was entitled to an involuntary manslaughter jury instruction when the defendant's testimony was that he "instinctively" grabbed a butcher knife off a table to scare the victim). Thus, as in *Debiase*, defendant produced sufficient evidence for a reasonable

jury to find him guilty of involuntary manslaughter, and the trial court erred in not giving the instruction on it.

In so concluding, I am mindful of other cases in which our Courts have held that a defendant was not entitled to an instruction on involuntary manslaughter when there was no evidence that the killing was unintentional other than the defendant's own claim that he had not meant to kill and his actions were such that "[f]atal consequences were not improbable." *Fisher*, 318 N.C. at 526, 350 S.E.2d at 342. In *Fisher*, the defendant used a hunting knife during a fight and testified that he used it to "indiscriminately cut[] and jab[]" the victim. *Id*. While the defendant contended he was entitled to an instruction on involuntary manslaughter because the victim's death was accidental, this Court disagreed, noting that

> In this case, the defendant admits that he knowingly slashed and stabbed the deceased with a hunting knife. The defendant's use of a knife indicates a clear intent to inflict great bodily harm or death on the deceased. There can be no claim of accidental injury where one knowingly and willingly uses a knife to slash and stab his victim. Fatal consequences were not improbable in light of the defendant's use of his hunting knife in such a manner. As such, the defendant's actions would not fit within the definition of involuntary manslaughter and therefore the defendant would not qualify for such an instruction.

*Id*. at 525-26, 350 S.E.2d at 342.

Here, however, the manner in which defendant killed Mr. McGill, a single stabbing motion through a closed screen door during a struggle where both parties were intoxicated and defendant claimed to be "dizzy" and in severe pain, supports the theory that Mr. McGill's death was unintentional.  In other words, unlike *Fisher* where the defendant's own actions conflicted with his claim that he did not intend to kill the victim, the manner in which defendant used the knife in the present case does not.  Fatal consequences were not necessarily probable based on the manner in which defendant used the knife.  Thus, I believe the facts at issue here are distinguishable from those cases because the record contains evidence other than defendant's "mere claim of lack of intent," *Debiase*, 211 N.C. App. at 509, 211 S.E.2d at 444, that supports defendant's contention that he did not intend to kill or injure Mr. McGill in any particular way.  Consequently, I believe defendant's actions fit within the definition of involuntary manslaughter when the evidence is taken in the light most favorable to defendant.

## Conclusion

In summary, while acknowledging that there was contradictory evidence presented at trial, I must respectfully dissent from the

majority as I believe that the trial court erred in not submitting an instruction to the jury on involuntary manslaughter when taking the evidence in the light most favorable to defendant.  Thus, I would hold that defendant is entitled to a new trial.