STATE OF NORTH CAROLINA v. ROBERT MARVIN PETERSON

No. 7428SC592

(Filed 15 January 1975)

1. **Homicide § 17— second degree murder — defendant's letter to deceased's wife — relevancy to show malice**

   The trial court in a second degree murder prosecution did not err in admitting into evidence a letter which defendant admitted writing to deceased's wife, since such evidence was relevant to show malice of defendant toward deceased.

2. **Criminal Law § 51— expert witness — qualification to testify as to defendant's state of consciousness**

   Where a witness in a second degree murder prosecution was tendered and accepted as an expert in clinical psychology, it still remained within the sound discretion of the trial judge to determine whether he was qualified as an expert to testify whether defendant was conscious or unconscious at the time he allegedly shot deceased.

3. **Homicide § 21— second degree murder — denial of nonsuit motion proper**

   The trial court did not err in denying defendant's motion for nonsuit in a second degree murder prosecution, though defendant's expert witness testified to his opinion that defendant was unconscious at the time of the shooting, where there was evidence from which the jury could find that defendant acted as though he were conscious and from this could reasonably find that in fact he was conscious.

State v. Peterson

4. **Homicide § 28— second degree murder — self-defense — failure to give instruction proper**

The trial court in a second degree murder prosecution properly instructed the jury that self-defense was not applicable in this case where the evidence tended to show that deceased struck defendant outside his home, defendant entered his home, walked some 20 feet across the living room, picked up a rifle, operated the lever required to place a shell in the chamber and to cock the rifle, turned and walked back to the door, fired the rifle once through the door, proceeded through the door into the yard where he twice again operated the lever and fired the rifle at deceased, once striking him in the back and thereby killing him; furthermore, the defense of self-defense was completely inconsistent with defendant's own testimony that he was unconscious at the time of the shooting.

5. **Homicide § 28— second degree murder — defense of unconsciousness — instruction on burden of proof**

When the trial court's charge in a second degree murder prosecution is considered as a whole, there is no reasonable possibility that the jury could have failed to understand that the State had the burden of proving beyond a reasonable doubt that defendant was conscious at the time of the fatal shooting and that defendant had no burden to show that he was unconscious.

APPEAL by defendant from *Martin (Harry C.), Judge,* 7 January 1974 Criminal Session of Superior Court held in BUNCOMBE County.

By bill of indictment in the form prescribed by G.S. 15-144, defendant was charged with the murder of John Charles Moore. He was brought to trial for murder in the second degree and pled not guilty. The State's evidence showed that at approximately 11:00 p.m. on 7 September 1973 defendant and his uncle returned to their home. As defendant started to enter the back door, Moore ran out from behind some bushes and hit him. Defendant then entered the house and procured a 30-30 Winchester, Model 94, lever action rifle. Moore remained on the outside of the house. Defendant shot once from inside the house, then kicked open the screen door and went outside the house, shooting the rifle twice after he got outside. One of the shots struck Moore just behind the shoulder on his left side, passed through his heart and lungs, and exited from the right side of his chest, causing his death.

Defendant testified that he had known Moore and Moore's wife for about three months. At about 9:00 p.m. on 7 September 1973 Moore came to defendant's home and said he had to talk with defendant but what he had to say could not be said there.

The two men left in Moore's car. After parking, Moore started drinking from a six-pack of beer which he had purchased and started talking to defendant about a $400.00 bill for long-distance phone calls charged to Moore's telephone for calls made by defendant when he lived in Michigan during the preceding summer. When defendant would not give Moore money to apply on the bill right then, Moore got mad and drew a pistol, threatening to kill defendant. A scuffle ensued, but defendant managed to calm Moore and Moore gave defendant the pistol. Moore later demanded return of the pistol, but defendant refused, and instead ran away through the woods to the French Broad River, dropping the gun in the woods as he ran. After swimming across the river and hitchhiking back into town, defendant contacted his uncle, who picked him up and drove him home. Arriving at the house, defendant was near the back door when Moore suddenly ran up, asked about the gun, and hit him. Defendant entered the house, picked up the rifle, and levered it. Defendant testified that the next thing he remembered was standing in the kitchen holding the gun while his wife and uncle were in the room staring at him. He remembered then walking into the living room and looking out the window and seeing Moore lying on the ground outside. Defendant testified that on several prior occasions he had "blacked out" after receiving a blow on the head or after having fallen.

On cross-examination defendant admitted having written a love letter to Moore's wife and testified that they had talked of divorcing their respective spouses and marrying.

Dr. Edward Huffman, who was accepted by the court as a medical expert with a specialty in psychiatry, testified that he had examined defendant for approximately ninety minutes on 3 December 1973. In response to a hypothetical question which reflected the evidence as to the events of 7 September, Dr. Huffman testified that in his opinion defendant "was completely unconscious at the time Mr. Moore was shot."

The jury found defendant guilty of murder in the second degree, and from judgment imposing a prison sentence, defendant appealed.

*Attorney General Carson by Associate Attorney Sammy R. Kirby and Assistant Attorney General Raymond W. Dew, Jr. for the State.*

*Peter L. Roda, Public Defender, for defendant appellant.*

State v. Peterson

PARKER, Judge.

[1]  The letter which defendant admitted writing to Moore's wife was clearly relevant to show malice of defendant toward Moore and was thus relevant to prove one of the essential elements of the offense with which defendant was charged. There was no error in allowing it to be introduced into evidence.

In support of his defense that he was unconscious at the time of the shooting, defendant called as a witness Dr. William C. Matthews, a clinical psychologist. In the absence of the jury, Dr. Matthews testified that he had talked with defendant twice, on 12 October and on 12 November, that he had given the defendant certain preliminary psycho-diagnostic tests, and that as a result of his examination of defendant he had the opinion that there was a "strong possibility that he [the defendant] was unconscious in that he was experiencing a dissociative reaction at the time of the shooting." After hearing this testimony presented in the absence of the jury, the trial judge expressed the view that the testimony would not be admissible and the witness was not at that time presented before the jury. Later, after the psychiatrist, Dr. Huffman, had testified before the jury, Dr. Matthews was called to the stand with the jury present and was tendered and accepted as an expert in clinical psychology. He was not asked to express any opinion based upon his examination and testing of defendant on the two occasions he had seen him, but was asked if he had an opinion satisfactory to himself as to whether defendant was completely unconscious at the time of the shooting based upon a hypothetical question which reflected the evidence as to the events of 7 September. In response to this question, Dr. Matthews replied that based on the hypothetical facts, he had the opinion that defendant "could possibly and probably be in a state of complete unconsciousness" at the time he did the shooting. The court allowed the State's attorney's motion to strike this answer and instructed the jury not to consider it. Defendant's counsel then asked:

"Assuming the hypothetical facts which have been alleged, state whether or not you have a definite opinion as to whether or not he was completely unconscious."

The court sustained an objection to this question. Had the witness been permitted to answer, he would have answered in the affirmative and would have testified that in his opinion defendant was completely unconscious.

State v. Peterson

[2]   In the court's rulings relative to the testimony of Dr. Matthews we find no reversible error. A finding by the trial judge that a witness is not qualified to testify as an expert as to a particular matter will ordinarily not be reversed on appeal, unless there is abuse of discretion or the ruling is based on an erroneous view of the law. 1 Stansbury's N. C. Evidence, § 133 (Brandis Revision, 1973). Here, although the witness was tendered and accepted as an expert in clinical psychology, it still remained within the sound discretion of the trial judge to determine whether he was qualified as an expert to testify whether defendant was conscious or unconscious at the time of the shooting. Courts which have considered the qualification of a non-medical psychologist to testify as to mental condition or competency are not in agreement, see Annot., 78 A.L.R. 2d 919, and in the present case we find no abuse of the trial court's discretion in excluding the opinion evidence of Dr. Matthews. ·

[3]   Defendant next assigns error to the denial of his motion for nonsuit made at the close of all of the evidence. In support of this assignment defendant contends that since the: expert opinion evidence of his witness, Dr. Huffman, that defendant was unconscious at the time of the shooting was uncontradicted, and since unconsiousness is not an affirmative defense, his motion for nonsuit should have been allowed. There is no merit in this contention. It is true, of course, that a person cannot be held criminally responsible for acts committed while he. is completely unconscious, *State v. Mercer*, 275 N.C. 108,: 165· S.E. 2d 328 (1969), but in the present case there was ample evidence, when viewed in the light most favorable to the State, from which the jury could find that defendant was conscious at the time he shot Moore. An eyewitness to the shooting, defendant's uncle, testified to defendant's actions at the time of the shooting. From this testimony the jury could find that. defendant then acted as though he were conscious and from this· could reasonably find that in fact he was conscious. The jury was not bound to accept the psychiatrist's opinion to the contrary.

[4]   The court instructed the jury that self-defense was not applicable in this case, and in this we find no error. There was no evidence that defendant acted in self-defense at the time of the shooting. On the contrary, all of the evidence shows that after defendant was struck by the deceased outside of his home, he entered the house, walked some 18 to 20 feet across the living room, picked up the rifle from behind the sofa, operated

State v. Peterson

the lever required to place a shell in the chamber and to cock
the rifle, turned and walked back to the kitchen door, fired the
rifle once through the door, and then proceeded through the door
out into the back yard, where he twice again operated the lever
and twice fired the rifle at the deceased. There was no evidence
that the deceased was armed or that after he struck defendant
one time, he made any attempt to follow defendant into the
house. There was no evidence that at the time the shots were
fired the deceased was advanced upon or otherwise threatening
the defendant. On the contrary, the physical evidence as to the
path of the bullet through the deceased's body and as to the
place in the yard where his body fell strongly suggests that at
the time the fatal shot was fired the deceased was turned and
moving away from the defendant. There was simply no evidence
that in shooting the deceased the defendant acted in a reason-
able apprehension of his own death or great bodily harm. More-
over, the defense of self-defense is completely inconsistent with
defendant's own testimony that he was unconscious at the time
of the shooting. For the court here to instruct the jury on the
law of self-defense would be to "give to the defendant the bene-
fit of a theory which is negatived by his own testimony and
to credit him with reactions which he does not profess to have
had, and which no evidence in the record, standing alone, is
sufficient to impute to him." *State v. Absher,* 226 N.C. 656, 660,
40 S.E. 2d 26, 28 (1946).

[5]   Finally, defendant contends the court committed reversible
error in its charge to the jury by failing adequate'y to instruct
the jury that the State had the burden of proving beyond a
reasonable doubt that the defendant was conscious at the time
of the shooting. We do not agree. At the outset of the charge
the court clearly and emphatically instructed the jurv that "in
this case the State has the burden of proof from the beginning
to the end" and that "[t]he defendant does not have any burden
at all in the case." Further in the charge the court instructed:

> "Unconsciousness is not an affirmative defense. That
> is, the defendant does not have to prove that. The State has
> the burden of proving that the defendant intentionally
> shot the deceased and thereby proximately caused his death.

> "Now if the State has satisfied you from the evidence
> beyond a reasonable doubt that the defendant intentionally
> shot the deceased Moore thereby proximately causing his
> death, then the law presumes that the killing was unlaw-

ful and that it was done with malice, and nothing else appearing, the defendant would be guilty of murder in the second degree. A jury finding to that effect negates and refutes any contention that the defendant was then unconscious.

"Now if the defendant was in fact completely unconscious at the time he allegedly committed the crime charged, he would not be responsible for it. Unconscious means not knowing or perceiving, not possessing mind or consciousness, not being aware of what is happening. The absence of consciousness not only precludes the existence of any mental state, but also excludes the possibility of a voluntary act without which there can be no criminal liability."

In the mandate portion of the charge the court clearly placed the burden upon the State to satisfy the jury from the evidence and beyond a reasonable doubt that defendant intentionally and with malice shot Moore, thereby causing his death. Considering the charge as a whole, there is no reasonable possibility that the jury could have failed to understand that the State had the burden of proving beyond a reasonable doubt that defendant was conscious at the time of the fatal shooting and that defendant had no burden to show that he was unconscious.

In defendant's trial and in the judgment imposed we find

No error.

Chief Judge BROCK and Judge MARTIN concur.