STATE OF NORTH CAROLINA v. ANTONIO RIDDICK

No. 458A94

(Filed 2 June 1995)

### 1. Homicide § 689 (NCI4th)— unlawful conduct—instruction on accident not required

The trial court was not required to instruct the jury on the defense of accident in a first-degree murder prosecution by defendant's evidence that he fired one shot into the air to scare the victim, the gun went off a second time accidentally and fired the fatal shot when he was startled by a loud noise, and he only intended to scare the victim and not to hurt him where the evidence was uncontroverted that defendant was engaged in unlawful conduct and acted with a wrongful purpose when the killing occurred in that defendant sought out the victim armed with a loaded gun; an altercation ensued during which defendant assaulted the victim, who was unarmed; defendant admitted that he fired the gun once intentionally; and the gun was in defendant's hand when the fatal shot was fired.

**Am Jur 2d, Homicide §§ 482-535.**

### 2. Homicide § 704 (NCI4th)— refusal to instruct on accident—error cured by first-degree murder verdict

Even if the trial court erred by refusing to instruct the jury on the defense of accident in a first-degree murder trial, this error was rendered harmless by the jury's verdict finding defendant guilty of first-degree murder where the trial court correctly instructed the jury as to possible verdicts of murder in the first and second degrees and involuntary manslaughter, and the jury found defendant guilty of first-degree murder on the theory of premeditation and deliberation, since an accidental killing, like involuntary manslaughter, is an unintentional killing; in reaching its verdict convicting defendant of first-degree murder, the jury necessarily found that defendant had the specific intent to kill the victim; and the verdict finding defendant guilty of first-degree murder and not the unintentional act of involuntary manslaughter precludes the possibility that the same jury would have accepted defendant's claim that the shooting was accidental had it been given the requested instruction.

**Am Jur 2d, Homicide §§ 529 et seq.**

STATE v. RIDDICK

[340 N.C. 338 (1995)]

**Supreme Court's views as to what constitute harmless errors or plain errors, under Rule 52 of Federal Rules of Criminal Procedure. 84 L. Ed. 2d 876.**

Appeal as of right by defendant pursuant to N.C.G.S. § 7A-27(a) from judgment imposing a sentence of life imprisonment entered by Brown (Frank R.), J., at the 31 May 1994 Criminal Session of Superior Court, Edgecombe County, upon a jury verdict of guilty of first-degree murder. Heard in the Supreme Court 12 May 1995.

*Michael F. Easley, Attorney General, by Simone E. Frier, Attorney at Law, and Ellen B. Scouten, Assistant Attorney General, for the State.*

*Eugene W. Muse for defendant-appellant.*

LAKE, Justice.

The defendant was indicted on 14 February 1994 for the first-degree murder of Michael Fitzgerald Smith. The defendant was tried noncapitally, and the jury found defendant guilty of first-degree murder on the theory of premeditation and deliberation. By judgment and commitment dated 1 June 1994, Judge Brown sentenced defendant to a term of life imprisonment.

At trial, the State presented evidence tending to show that Michael Smith died sometime during the evening of 3 December 1993. Mr. Smith was found at 211 First Street, lying face down in a pool of blood, by an officer from the Princeville Police Department. The officer observed a gunshot wound to the back of the victim's neck as well as wounds to the face. Dr. Robert Zipf performed an autopsy which showed that a single bullet entered the victim's body through the back of the neck and cut through the victim's spinal cord causing death.

Veronica Fleming, Smith's girlfriend, testified that she lived at 211 First Street. On 29 November 1993, the defendant came to her home looking for the victim. The defendant was looking for Smith because Smith had allegedly taken fifty dollars worth of drugs from the defendant's girlfriend. When Ms. Fleming told the defendant that the victim was not there, the defendant replied, "If you see him, tell him I'm going to kill him."

Ms. Fleming further testified that the victim came to her house shortly after 8:00 p.m. on the evening of 3 December 1993. While she

and the victim were sitting in the living room, the defendant knocked on her door. Ms. Fleming opened the door, and the defendant came in and began screaming at the victim. Ms. Fleming stated that when she asked the defendant to leave her house, he suddenly backed up, reached into his pants and pulled out a gun. The defendant tried to get Smith to go outside but Smith refused. Ms. Fleming testified that the defendant then put the gun to her head and said to the victim, "If you're not going to move I'll kill her first." Smith then agreed to go outside with the defendant.

Ms. Fleming further testified that when Smith got to the screen door, Danny Harris, a codefendant, pulled Smith the rest of the way through the door. As the two men started to fight, the defendant ran out of the house and began hitting the victim about the head with his gun. Ms. Fleming watched the fight from a window in her house. According to Ms. Fleming, as the victim tried to run away, the defendant fired the gun. Ms. Fleming saw the victim fall. She then testified that the defendant ran to the victim, stood over him and shot him in the back of the head.

The State's evidence further showed that shortly after 8:00 p.m. on 3 December 1993, Vincent Draughn saw the defendant drive by in a white, two-door Cavalier. The defendant was driving in the direction of First Street. Approximately twenty minutes later, he heard two gunshots. Mr. Draughn testified that he immediately thought to go to First Street because the defendant had told him that he was going to kill Smith, and he knew Smith was in that area.

Lonnie Everette lived at 222 First Street on 3 December 1993. Mr. Everette testified that he heard two gunshots during the evening of 3 December 1993. Mr. Everette further testified that when he looked in the direction of the sound, he saw someone fall in the yard of 211 First Street and then saw two black males run toward a white, two-door Cavalier that was parked at the curb.

The defendant's evidence tended to show that the defendant knew the victim and Ms. Fleming and that he saw both of them on the evening of 3 December 1993 sometime after 8:00 p.m. The defendant testified that he had been looking for Smith but never told anyone that he was going to kill Smith. The defendant stated that he pulled out his gun when confronting Smith only because Smith was "big." Ms. Fleming then asked the defendant to "take it outside." The defendant testified that the victim went out the door and "barreled"

into Danny Harris. The defendant then hit the victim once with his gun.

The victim jumped off the porch and began to run away. The defendant testified that he fired once into the air to scare the victim. The defendant stated that after he fired the first shot into the air, he heard a door slam behind him. The loud noise from the slamming door, according to defendant, startled him and caused him to fire a second shot. The defendant said that when he looked up, he saw the victim fall to the ground, but he did not know the victim had been shot.

On cross-examination, the defendant admitted that he was looking for the victim, that he knew where to find the victim and that he intended to confront the victim. He also stated that he pulled the gun out even though the victim did not have a weapon.

Danny Harris similarly testified for the defense that the defendant fired "up in the air" and that he heard a second shot after hearing a loud noise behind him and the defendant which caused him to "jump and look back."

[1] In his sole assignment of error, the defendant contends that the trial court erred by denying his request to instruct the jury on the defense of accident. The pattern jury instruction on accident reads as follows:

Where evidence is offered that tends to show that the victim's death was accidental, and you find that the killing was in fact accidental, the defendant would not be guilty of any crime, even though his acts were responsible for the victim's death. A killing is accidental if it is unintentional, occurs during the course of lawful conduct, and does not involve culpable negligence. A killing cannot be [premeditated] (or) [intentional] (or) [culpably negligent] if it was the result of an accident. When the defendant asserts that the victim's death was the result of an accident, he is, in effect, denying the existence of those facts which the State must prove beyond a reasonable doubt in order to convict him. Therefore, the burden is on the State to prove those essential facts and in so doing, disprove the defendant's assertion of accidental death. The State must satisfy you beyong [sic] a reasonable doubt that the victim's death was not accidental before you may return a verdict of guilty.

*Note Well. Add to final mandate at end:*

Now members of the jury, bearing in mind that the burden of proof rests upon the State to establish the guilt of the defendant beyond a reasonable doubt, I charge that if you find from the evidence that the killing of the deceased was accidental, that is, that the victim's death was brought about by an unknown cause or that it was from an unusual or unexpected event from a known cause, and you also find that the killing of the deceased was unintentional, that at the time of the homicide the defendant was engaged in the performance of a lawful act without any intention to do harm and that he was not culpably negligent; if you find these to be the facts, remembering that the burden is upon the State, then I charge you that the killing of the deceased was a homicide by misadventure and if you so find, it would be your duty to render a verdict of not guilty as to this defendant.

N.C.P.I.—Crim. 307.10 (1986).

The defendant argues that the evidence presented by defendant and corroborated by Danny Harris, when taken in the light most favorable to the defense, was sufficient for the jury to find that the fatal shooting occurred by accident. In support of this argument, the defendant points to testimony tending to show that he fired one shot into the air to scare the victim, that the gun went off a second time accidentally when he was startled by a loud noise, and that he only wanted to scare the victim and did not intend to hurt the victim. The defendant further argues that even though conflicting evidence was presented by the State, it was the province of the jury, not the judge, to resolve such conflict after receiving the proper instructions. We cannot agree under the circumstances presented.

A killing will be excused as an accident when it is unintentional and when the perpetrator, in doing the homicidal act, did so without wrongful purpose or criminal negligence while engaged in a lawful enterprise. *State v. Faust*, 254 N.C. 101, 112, 118 S.E.2d 769, 776, *cert. denied*, 368 U.S. 851, 7 L. Ed. 2d 49 (1961). "The defense of accident 'is triggered in factual situations where a defendant, without premeditation, intent, or culpable negligence, commits acts which bring about the death of another.' " *State v. Turner*, 330 N.C. 249, 262, 410 S.E.2d 847, 854 (1991) (quoting *State v. Lytton*, 319 N.C. 422, 425, 355 S.E.2d 485, 487 (1987)). However, the evidence does not raise the defense of accident where the defendant was not engaged in lawful conduct when the killing occurred. *Faust*, 254 N.C. at 113, 118 S.E.2d at 776.

In the case *sub judice*, the evidence clearly showed that the defendant voluntarily created the volatile situation which resulted in the victim's death. The defendant testified that he deliberately went looking for the victim armed with a loaded gun. The defendant stated that he intended to confront the victim. When the defendant arrived at Ms. Fleming's home, he threatened Ms. Fleming and the victim with his gun. An altercation ensued during which defendant assaulted the victim. Both Ms. Fleming and the victim were unarmed. Two witnesses testified that the defendant had previously threatened to kill the victim. Furthermore, the defendant admits that he fired the gun once intentionally and that the gun was in his hand when the fatal shot was fired.

The evidence is thus undisputed that the defendant sought out the victim, that the defendant intentionally confronted the victim with a loaded firearm, that the defendant assaulted the victim, and that the gun was in the defendant's hand when two bullets, one of which entered the victim's body, were fired from it. "The fact that the defendant claims now that he did not intend the shooting does not cleanse him of culpability and thus give rise to a defense of accident." *Lytton*, 319 N.C. at 426, 355 S.E.2d at 487. Where, as here, the evidence is uncontroverted that the defendant was engaged in unlawful conduct and acted with a wrongful purpose when the killing occurred, the trial court does not err in refusing to submit the defense of accident.

[2] Even assuming, *arguendo*, that the trial court erred in this regard, the error was harmless because the defendant has failed to show he was prejudiced by the trial court's refusal to submit the requested instruction. The trial judge gave the jury correct instructions as to possible verdicts of murder in the first and second degrees and of involuntary manslaughter. The jury found the defendant guilty of first-degree murder on the theory of premeditation and deliberation.

Murder in the first degree is the intentional and unlawful killing of a human being with malice and with premeditation and deliberation. *State v. Fisher*, 318 N.C. 512, 517, 350 S.E.2d 334, 337 (1986). Involuntary manslaughter is the "unlawful killing of a human being without malice, without premeditation and deliberation, and without [the] intention to kill or inflict serious bodily injury." *State v. Powell*, 336 N.C. 762, 767, 446 S.E.2d 26, 29 (1994). An accidental killing, like involuntary manslaughter, is an unintentional killing. Thus, with respect to lack of intent, a proper instruction on involuntary

KRAFT FOODSERVICE v. HARDEE

[340 N.C. 344 (1995)]

manslaughter is the functional equivalent of the requested instruction on accident.

The jury in the present case was instructed that it could not return a verdict finding the defendant guilty of first-degree murder unless it found beyond a reasonable doubt that the defendant specifically intended to kill the victim. In reaching its verdict convicting the defendant of first-degree murder, the jury found that the defendant had the specific intent to kill Michael Smith and, necessarily, rejected the possibility that the killing was unintentional. Therefore, the jury verdict finding the defendant guilty of first-degree murder, and not the unintentional act of involuntary manslaughter, precludes the possibility that the same jury would have accepted the defendant's claim that the shooting was accidental even if it had been given the requested instruction. This assignment of error is without merit and, accordingly, is overruled.

For the foregoing reasons, we conclude that the defendant received a fair trial, free of prejudicial error.

NO ERROR.