IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA16-490

 Filed: 20 December 2016

Onslow County, Nos. 13 CRS 55492-93

STATE OF NORTH CAROLINA,

 v.

DWAYNE ROBINSON, Defendant.

 Appeal by Defendant from judgments entered 9 November 2015 by Judge Jack

W. Jenkins in Onslow County Superior Court. Heard in the Court of Appeals 5

October 2016.

 Attorney General Roy Cooper, by Special Deputy Attorney General Hilda
 Burnett-Baker, for the State.

 Appellate Defender Glenn Gerding, by Assistant Appellate Defender Hannah H.
 Love, for Defendant-Appellant.

 INMAN, Judge.

 A person who, while carrying a loaded firearm, starts a physical fight and

discharges the firearm injuring another person, is not entitled to a jury instruction

on the defense of accident.

 Dwayne Robinson (“Defendant”) appeals from the judgments entered upon his

convictions for attempted first degree murder, assault with a deadly weapon with

intent to kill inflicting serious injury, and a sentencing enhancement for the assault

charge based on the fact that Defendant was wearing or had in his immediate
 STATE V. ROBINSON

 Opinion of the Court

possession a bulletproof vest at the time of the assault. On appeal, Defendant first

argues that the trial court committed plain error by failing to instruct the jury on the

defense of accident. Additionally, Defendant argues that the trial court committed

plain error in its instructions to the jury regarding the bulletproof vest. After careful

review, we conclude that Defendant has failed to demonstrate plain error.

 Factual and Procedural Background

 Evidence presented at trial included the following:

 On 23 August 2013, at approximately 10:30 p.m., Jacksonville Police

Department officers were dispatched in response to a 911 call reporting shots fired

near 600 Hammock Lane. Officers approaching the apartments in marked police

cruisers from different directions observed a sports utility vehicle recklessly speeding

away from the area. The officers converged on the vehicle, drew their weapons, and

ordered the vehicle’s occupants to step out.

 Latasha Sutton (“Ms. Sutton”) was in the driver’s seat. Justin Johnson

(“Johnson”), Ms. Sutton’s boyfriend, was in the front passenger seat. In the back seat,

police found Defendant. Ms. Sutton’s two young children were also in the vehicle.

After removing all the occupants from the vehicle, officers detected the odor of

gunpowder. Crime scene investigators then arrived and searched the vehicle. They

found loaded handguns, handcuffs, ammunition, rope, gloves, a knife in its sheath,

and bulletproof vests. Ms. Sutton told officers, “[n]one of this would have happened

 -2-
 STATE V. ROBINSON

 Opinion of the Court

if you would have done your job yesterday.” One of the officers had responded to a

domestic disturbance at the same address a day earlier and had seen Johnson, Ms.

Sutton, and Ms. Sutton’s estranged husband, Anthony Sutton (“Mr. Sutton”). The

Suttons were fighting over custody of their children.

 After stopping the vehicle in which Defendant was riding, officers searched the

area outside the call address and found Mr. Sutton lying on the sidewalk, handcuffed

and bleeding from gunshot wounds. Officer Lonnie Horton observed that Mr. Sutton

had been shot once in the back of his left leg, just behind his knee, and once in the

front of his right thigh. Mr. Sutton was taken to the hospital and treated for his

injuries.

 Defendant testified at trial as follows: Defendant had never met Mr. Sutton or

Ms. Sutton and had no knowledge of the Suttons’ child custody dispute prior to the

shooting that resulted in his arrest. Johnson lived in Fayetteville and Defendant

lived right outside of Fayetteville. They had become friends years earlier when both

were deployed in Iraq by the United States Army. Defendant telephoned Johnson on

23 August 2013 to invite him to a Fayetteville restaurant to celebrate Defendant’s

graduation from an Army leadership school. When Defendant arrived at Johnson’s

apartment at 6:00 p.m., Johnson asked Defendant to ride with him to pick up

Johnson’s girlfriend, Ms. Sutton, and to take her to pick up her children. Defendant

assumed the children were in Fayetteville. After Johnson and Defendant picked up

 -3-
 STATE V. ROBINSON

 Opinion of the Court

Ms. Sutton, Defendant fell asleep in the back of Johnson’s vehicle. When he awoke,

the vehicle was parked at an apartment complex in Jacksonville. Defendant exited

the vehicle to stretch his legs and walked about 50 yards toward a nearby road.

 Defendant testified that as he was walking back toward Johnson’s vehicle, he

was almost hit by an SUV that entered the parking lot. The SUV driver, Mr. Sutton,

parked and started walking in Defendant’s direction. Defendant confronted Mr.

Sutton about nearly hitting him, but Mr. Sutton said nothing and continued walking

past him. Defendant then grabbed Mr. Sutton by the back of his shirt, pulled and

shoved him down on the asphalt, and cursed at him. When Mr. Sutton stood up,

Defendant hit him in the head. Defendant and Mr. Sutton then began wrestling and

fighting in the parking lot. Defendant had a loaded .40 caliber gun in the waistband

of his pants, for which he had a concealed carry permit. During the fight, Mr. Sutton

pulled Defendant down to the ground. When Defendant stood up, his gun came loose,

slid down his pants leg, and was caught in his shoe. As Defendant tried to retrieve

the gun, Mr. Sutton grabbed for it as well, and the two continued to wrestle and fight

for the gun. Mr. Sutton had one hand on the barrel of the gun and the other hand on

Defendant’s wrist. Defendant’s finger was on the trigger of the gun. Defendant hit

Mr. Sutton’s hand off of the barrel, and the gun went off.

 Defendant testified that after the gun discharged, the two men continued to

wrestle in the rough grass behind Mr. Sutton’s apartment building. The gun

 -4-
 STATE V. ROBINSON

 Opinion of the Court

discharged again. Mr. Sutton then pulled away from the fight, and the gun

discharged a third time. After the third shot, the gun was out of both Defendant’s

and Mr. Sutton’s hands, and Defendant put Mr. Sutton into a chokehold to stop him

from fighting. Johnson then called out to Defendant, and Defendant told Johnson

they were in the yard behind the apartment. Johnson tackled Mr. Sutton and

attempted to handcuff him, but Johnson was unable to handcuff both hands.

Defendant and Johnson then ran away. Defendant denied pointing the gun at Mr.

Sutton at any time that night. Defendant also denied wearing a bulletproof vest.

 Mr. Sutton testified at trial as follows: He had just parked his car outside his

apartment after 9:00 p.m. on 23 August 2013 and was standing in the parking lot and

using his phone when he noticed a man wearing a bulletproof vest and gloves walking

in his direction. Mr. Sutton thought it was odd that the man was wearing gloves

because the weather was hot. He was not concerned about the vest because he was

familiar with military service members exercising while wearing vests. When Mr.

Sutton next looked up from his phone, the man was holding a gun to his face. Mr.

Sutton struck the man in the face and ran, then heard a loud sound and his leg went

numb, and he knew he had been shot. Mr. Sutton tried to continue running but fell.

The man leaned over him and said, “do you want to die?” Mr. Sutton told the man

that “he wasn’t going to kill [any]body.” Mr. Sutton heard the gun discharge a second

time and believed he had been shot in the head. Mr. Sutton fought with the man for

 -5-
 STATE V. ROBINSON

 Opinion of the Court

control of the gun, which resulted in the two men wrestling. While Mr. Sutton and

the man were wrestling, another man approached and tried to handcuff Mr. Sutton’s

hands together. Johnson also went through Mr. Sutton’s pockets, grabbed Mr.

Sutton’s keys, and ran away. Mr. Sutton eventually let go of the gun, tried to run

towards the building, and then heard a third gunshot.

 Lawrence Herndon, a neighbor of Mr. Sutton’s, testified that he was in his

apartment that evening and looked out of his front window after he heard a “pop

noise.” He did not see anyone outside. Upon hearing a second “pop,” Herndon looked

out of his back window and saw Mr. Sutton on the ground and two people struggling

with him. Of the two men fighting with Mr. Sutton, the taller man had a gun and

was wearing a bulletproof vest. After seeing the taller man pointing a gun at Mr.

Sutton’s throat and hearing someone say the word “kill,” Herndon told his wife to call

911. Herndon later identified Defendant and Johnson as the two men fighting with

Mr. Sutton, and specifically identified Defendant as the man with the gun and

bulletproof vest.

 Defendant was indicted on charges of attempted first degree murder, assault

with a deadly weapon with intent to kill inflicting serious injury, first degree

kidnapping, felony conspiracy, and wearing a bulletproof vest during the commission

of those crimes. On 9 November 2015, Defendant’s case was called for trial in Onslow

 -6-
 STATE V. ROBINSON

 Opinion of the Court

County Superior Court. The State declined to proceed on the kidnapping and a

related conspiracy charge.

 On 17 November 2015, the jury found Defendant guilty of attempted first

degree murder and assault with a deadly weapon with intent to kill inflicting serious

injury, and found that Defendant wore or had in his immediate possession a bullet-

proof vest at the time of the felony. The jury found Defendant not guilty of conspiracy

to commit first degree murder, conspiracy to commit assault with a deadly weapon

with intent to kill inflicting serious injury, and conspiracy to commit assault with a

deadly weapon inflicting serious injury. Defendant was sentenced to a minimum

term of 192 months to a maximum term of 243 months for the attempted first degree

murder charge and a minimum term of 157 months to a maximum term of 201

months for the assault with a deadly weapon with intent to kill inflicting serious

injury charge, applying the bulletproof vest enhancement. Defendant appeals his

convictions.

 Analysis

I. Jury Instruction Regarding Defense of Accident

 Defendant argues that the trial court erred by failing to instruct the jury on

the defense of accident because Defendant testified that his gun discharged

accidentally during the fight with Mr. Sutton. We hold that the trial court did not

err in omitting the instruction and that, even if the trial court had instructed the jury

 -7-
 STATE V. ROBINSON

 Opinion of the Court

regarding the defense of accident, it is not probable that jurors would have reached a

different verdict.

 Defendant’s counsel did not request an instruction regarding the theory of

accident. We therefore review for plain error. State v. Gregory, 342 N.C. 580, 584,

467 S.E.2d 28, 31 (1996). To show plain error, Defendant must establish “not only

that there was error, but that absent the error, the jury probably would have reached

a different result.” State v. Jordan, 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993).

To prevail on appeal from the trial court’s failure to instruct jurors on a defense, a

defendant “must show that the requested instruction was not given in substance, and

that substantial evidence supported the omitted instruction.” State v. White, 77 N.C.

App. 45, 52, 334 S.E.2d 786, 792 (1985) (citations omitted). “The trial court need only

give the jury instructions supported by a reasonable view of the evidence.” Id. at 52,

334 S.E.2d at 792 (citation omitted).

 Although this Court usually considers the evidence in a light most favorable to

the State when reviewing a criminal defendant’s assignment of error, the standard is

the opposite with respect to the omission of an instruction regarding a defense.

“When determining whether the evidence is sufficient to entitle a defendant to jury

instructions on a defense or mitigating factor, courts must consider the evidence in

the light most favorable to defendant.” State v. Mash, 323 N.C. 339, 348, 372 S.E.2d

532, 537 (1988) (citations omitted).

 -8-
 STATE V. ROBINSON

 Opinion of the Court

 The State argues that Defendant was not entitled to an instruction on the

defense of accident because Defendant admitted that he started the fight with Mr.

Sutton prior to the shooting. “The law is clear that ‘evidence does not raise the

defense of accident where the defendant was not engaged in lawful conduct when [a

shooting] occurred.’ ” State v. Gattis, 166 N.C. App. 1, 11, 601 S.E.2d 205, 211 (2004)

(quoting State v. Riddick, 340 N.C. 338, 342, 457 S.E.2d 728, 731 (1995)).

 The evidence, even considered in a light most favorable to Defendant, reveals

that Defendant was engaged in wrongdoing when he shot Mr. Sutton. Defendant

admitted that he physically assaulted Mr. Sutton and had his hand on the trigger of

his gun when it discharged, injuring Mr. Sutton. Because by his own admission he

was engaged in wrongful conduct when he shot Mr. Sutton. Defendant was not

entitled to a jury instruction on the defense of accident.

 Even assuming arguendo that Defendant was not precluded from asserting

the defense of accident and that the trial court erred in not sua sponte instructing the

jury on that defense, Defendant cannot establish plain error in light of other evidence

presented. Two eyewitnesses—Lawrence Herndon and Mr. Sutton—testified that

Defendant held a gun to Mr. Sutton’s head. Mr. Sutton testified that he was first

shot by Defendant in the back of his knee while running from him. Officer Lonnie

Horton, one of the first officers responding to the shooting scene, testified that Mr.

Sutton had an entry bullet wound in the back of his knee. We cannot conclude, in

 -9-
 STATE V. ROBINSON

 Opinion of the Court

light of this evidence, that the jury probably would have reached a different result

had it been instructed regarding the defense of accident.

II. Jury Instruction Regarding Bulletproof Vest

 Defendant next contends that the trial court erred in instructing the jury that,

if it found Defendant guilty of any of the crimes charged, it was required to determine

whether Defendant wore or had in his immediate possession a bulletproof vest at the

time he committed such crime. We conclude that the trial court did not err in this

instruction.

 N.C. Gen. Stat. § 15A-1340.16C(a) provides:

 If a person is convicted of a felony and it is found as
 provided in this section that the person wore or had in his
 or her immediate possession a bullet-proof vest at the time
 of the felony, then the person is guilty of a felony that is
 one class higher than the underlying felony for which the
 person was convicted.

N.C. Gen. Stat. § 15A-1340.16C(a) (2015).

 The trial court instructed the jury that if it found Defendant guilty of any

offense, it must answer “yes” or “no” to the question, “Do you find that he wore, or

had in his immediate possession, a bulletproof vest at the time he committed the

offense?” The trial court instructed the jury that the burden of proof on this issue

was on the State, and that the jury should answer “yes” to the question only if it found

the fact beyond a reasonable doubt.

 - 10 -
 STATE V. ROBINSON

 Opinion of the Court

 The North Carolina Constitution provides: “No person shall be convicted of any

crime but by the unanimous verdict of a jury in open court[.]” N.C. Const. art. I, §24.

The unanimity requirement is not violated “if the trial court merely instructs the jury

disjunctively as to various alternative acts which will establish an element of the

offense[.]” State v. Bell, 359 N.C. 1, 30, 603 S.E.2d 93, 113 (2004) (emphasis in

original) (quoting State v. Lyons, 330 N.C. 298, 302–03, 412 S.E.2d 308, 312 (1991)).

 Defendant contends that the instruction regarding the bulletproof vest was

improper because it presented two alternative theories, only one of which was

supported by the evidence. “Where the trial judge has submitted the case to the jury

on alternative theories, one of which is determined to be erroneous and the other

properly submitted, . . . this Court will not assume that the jury based its verdict on

the theory for which it received a proper instruction.” State v. Pakulski, 319 N.C.

562, 574, 356 S.E.2d 319, 326 (1987).

 Defendant does not dispute that both Mr. Sutton and Lawrence Herndon

testified that Defendant was wearing a bulletproof vest at the time of the shooting.

However, Defendant argues that by relying on this testimony, the State has failed to

contend that there was any evidence that could support an instruction that a

bulletproof vest was in Defendant’s immediate possession—as opposed to being worn

by Defendant—at the time of the shooting.

 - 11 -
 STATE V. ROBINSON

 Opinion of the Court

 In order to submit to a jury a criminal charge, including the enhancement

based upon use of a bulletproof vest during the commission of a felony, the State must

present substantial evidence, which is “such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.” State v. Smith, 300 N.C. 71, 78–

79, 265 S.E.2d 164, 169 (1980) (citations omitted). To determine if evidence is

sufficient, this Court views the evidence in the light most favorable to the State. State

v. Rose, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994).

 Although Mr. Sutton and Lawrence Herndon testified that Defendant wore a

bulletproof vest at the time of the shooting, Defendant denied wearing a vest. If

jurors had believed Defendant’s testimony raised a reasonable doubt regarding

whether he had been wearing the vest, they could answer “yes” to the question on the

verdict sheet only if they found beyond a reasonable doubt that a bulletproof vest was

in Defendant’s “immediate possession” at the time of the shooting.

 The State introduced evidence sufficient to support a reasonable inference that

a bulletproof vest was in Defendant’s immediate possession at the time of the

shooting. Police officers found a bulletproof vest in the back of the vehicle where

Defendant had been sitting when fleeing the scene of the shooting. Forensic testing

determined that the blood on the vest belonged to Mr. Sutton, whom Defendant shot.

Therefore, if jurors were not convinced beyond a reasonable doubt that Defendant

was wearing the vest during the shooting, they could reasonably infer that the vest

 - 12 -
 STATE V. ROBINSON

 Opinion of the Court

was in Defendant’s immediate possession at the time he committed the offenses for

which he was found guilty. Because the evidence submitted was sufficient to allow

jurors to find either of the alternative theories submitted to them regarding

Defendant’s possession of a bulletproof vest at the time of the shooting—either by

wearing it or having it in his immediate possession—Defendant’s argument that the

charge was improperly submitted to the jury is without merit and is overruled.

 Conclusion

 The evidence submitted at trial precluded a jury instruction on the defense of

accident and supported a jury instruction on the charge that Defendant committed

felony assault while wearing or having in his immediate possession a bulletproof vest.

Accordingly, Defendant has failed to demonstrate plain error.

 NO PLAIN ERROR.

 Judges DAVIS and ENOCHS concur.

 - 13 -