IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-697

 No. COA20-882

 Filed 21 December 2021

 Swain County, No. 14CRS050106

 STATE OF NORTH CAROLINA

 v.

 ALEXANDER MICHAEL CRISP

 Appeal by Defendant from judgment entered 16 September 2019 by Judge

 Alan Z. Thornburg in Swain County Superior Court. Heard in the Court of Appeals

 22 September 2021.

 Attorney General Joshua H. Stein, by Assistant Attorney General Marissa K.
 Jensen, for the State-Appellee.

 Appellate Defender Glenn Gerding, by Assistant Appellate Defender Candace
 Washington, for Defendant-Appellant.

 COLLINS, Judge.

¶1 Defendant Alexander Crisp appeals from a judgment entered upon a jury

 verdict of guilty of second-degree murder. Defendant argues that the trial court

 plainly erred by omitting a jury instruction on the defense of accident. Defendant

 also argues that the trial court erred by sentencing him as a Class B1 felon because

 the jury’s verdict was ambiguous in light of evidence that Defendant acted with a

 depraved heart. Because there was insufficient evidence to support an accident
 STATE V. CRISP

 2021-NCCOA-697

 Opinion of the Court

 instruction and there was no evidence to support a depraved-heart theory of malice,

 we discern no error.

 I. Procedural History

¶2 Defendant was indicted for first-degree murder on 10 March 2014. Defendant

 was tried before a jury from 29 July to 16 September 2019. The jury found Defendant

 guilty of second-degree murder. The trial court sentenced Defendant, as a Class B1

 felon with a prior record level of II, to 221 to 278 months in prison with credit for time

 served in pretrial confinement. Defendant timely gave written notice of appeal.

 II. Factual Background

¶3 In February 2014, Defendant, his girlfriend Summer Lynn Johnson, and their

 seven-month-old daughter were living in a trailer on the property of Defendant’s

 parents. Defendant’s parents, Michael Crisp and Andrea Crisp (“Mr. Crisp” and

 “Mrs. Crisp”) lived in a home nearby on the same property.

¶4 The evidence at trial tended to show the following: On the morning of

 19 February 2014, Defendant, Johnson, and their daughter were the only persons in

 the trailer. Between 5:30 and 6:00 am, Defendant was asleep on the couch and woke

 to Johnson “yelling at [him] to wake up.” When Defendant saw their daughter

 “crawling down the hallway right through the kitchen,” Defendant picked her up and

 began to make her a bottle. Defendant estimated that he and Johnson were up for

 30 to 40 minutes and continued to argue, “yell[ing] back and forth” and “confront[ing]

 each other.”
 STATE V. CRISP

 2021-NCCOA-697

 Opinion of the Court

¶5 During the argument, Johnson suffered a gunshot wound to her left eye.

 Defendant called 911 at 6:19 am. After the 911 dispatcher instructed him to perform

 CPR, Defendant ended the call and called his parents’ home phone to reach his

 mother, who knew CPR. Defendant’s parents both ran to the trailer, where they saw

 Defendant at the back door. Mrs. Crisp heard Defendant yell, “She shot herself in

 the eye.” Mrs. Crisp entered the trailer and began to perform CPR on Johnson.

¶6 Two ambulances arrived at the trailer at 6:29 am. Paramedics and EMTs

 entered the trailer, went to the back bedroom where Johnson was laying, and directed

 Mrs. Crisp to discontinue CPR. The paramedics and EMTs noticed Defendant

 racking the slide of a pistol and requested that he put the gun down. The paramedics

 and EMTs’ attempts to resuscitate Johnson were unsuccessful and Johnson was

 pronounced dead at 6:40 am.

¶7 At trial, the State’s theory was that Johnson was planning to leave Defendant,

 the argument between Defendant and Johnson escalated, and Defendant

 intentionally shot Johnson. Defendant’s theory was that Johnson shot herself either

 accidentally or intentionally. Defendant testified that he was not in the bedroom and

 did not fire the gun. Likewise, multiple witnesses testified that Defendant stated

 that he was outside the bedroom when the gun fired.

 III. Discussion

 A. Accident Instruction

¶8 Defendant argues that the trial court plainly erred by failing to instruct the
 STATE V. CRISP

 2021-NCCOA-697

 Opinion of the Court

 jury on the defense of accident.

¶9 A party may not make the trial court’s omission of a jury instruction “the basis

 of an issue presented on appeal unless the party objects thereto before the jury retires

 to consider its verdict, stating distinctly that to which objection is made and the

 grounds of the objection[.]” N.C. R. App. P. 10(a)(2). Defendant neither requested an

 instruction on the defense of accident nor objected to the trial court’s omission of such

 an instruction. However, because Defendant “specifically and distinctly” contends

 that the trial court’s omission of an accident instruction amounted to plain error, we

 will review this issue for plain error. N.C. R. App. P. 10(a)(4); State v. Smith, 362

 N.C. 583, 596, 669 S.E.2d 299, 308 (2008) (reviewing jury instructions for plain error

 where defendant failed to object at trial).

¶ 10 “For error to constitute plain error, a defendant must demonstrate that a

 fundamental error occurred at trial.” State v. Lawrence, 365 N.C. 506, 518, 723

 S.E.2d 326, 334 (2012) (citation omitted). “To show that an error was fundamental,

 a defendant must establish prejudice—that, after examination of the entire record,

 the error ‘had a probable impact on the jury’s finding that the defendant was guilty.’”

 Id. (quoting State v. Odom, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983)).

¶ 11 A trial court must

 instruct the jury on all of the substantive features of a case.
 This is a duty which arises notwithstanding the absence of
 a request by one of the parties for a particular instruction.
 All defenses arising from the evidence presented during the
 trial constitute substantive features of a case and therefore
 STATE V. CRISP

 2021-NCCOA-697

 Opinion of the Court

 warrant the trial court’s instruction thereon.

 Id. at 381, 368 S.E.2d at 617 (citations omitted). “When determining whether the

 evidence is sufficient to entitle a defendant to jury instructions on a defense or

 mitigating factor, courts must consider the evidence in the light most favorable to

 defendant.” State v. Mercer, 373 N.C. 459, 464, 838 S.E.2d 359, 363 (2020) (quotation

 marks and citations omitted).

¶ 12 The defense of accident “is not an affirmative defense, but acts to negate the

 mens rea element of homicide.” State v. Lytton, 319 N.C. 422, 425-26, 355 S.E.2d 485,

 487 (1987) (citations omitted). “A killing will be excused as an accident when it is

 unintentional and when the perpetrator, in doing the homicidal act, did so without

 wrongful purpose or criminal negligence while engaged in a lawful enterprise.” State

 v. Riddick, 340 N.C. 338, 342, 457 S.E.2d 728, 731 (1995) (citation omitted). “The

 defense of accident is triggered in factual situations where a defendant, without

 premeditation, intent, or culpable negligence, commits acts which bring about the

 death of another.” Id. (quotation marks and citations omitted).

¶ 13 The evidence in the present case, when viewed in the light most favorable to

 Defendant, did not warrant an instruction on the defense of accident. To the contrary,

 when viewed in the light most favorable to Defendant, the evidence suggested that

 Defendant was not in the bedroom and did not shoot the gun: The dispatcher who

 fielded the 911 call from Defendant noted in the call log that Defendant “advised . . .

 that someone had shot themselves in the eye accidentally with his .22 pistol[.]”
 STATE V. CRISP

 2021-NCCOA-697

 Opinion of the Court

 Thomas Simmons, one of the paramedics who responded to the scene, testified that

 Defendant “made a comment that the gun wasn’t supposed to go off, that she grabbed

 for the gun and it just went off[.]” Steven Howell, another paramedic, testified that

 he overheard Defendant state that “he couldn’t believe there had been a bullet in the

 chamber. He couldn’t believe that it was loaded.” Howell further testified that

 Defendant stated that “during the argument . . . [Johnson] grabbed the barrel” and

 “stated several times that she would kill herself, that she would put a bullet in her

 head.”

¶ 14 Mr. Crisp testified that after he arrived at the trailer, Defendant was crying

 and said that “[h]e didn’t know what happened” and “couldn’t figure out what

 happened.” Mr. Crisp was within earshot of Defendant’s conversation with Sergeant

 Dennis Elliott of the Swain County Sheriffs’ Department. Mr. Crisp testified that he

 heard Defendant say to Elliott

 that Summer threatened to shoot [Defendant] in the head.
 . . . He said that he was fixing a bottle at the kitchen sink
 and . . . [h]e started back into the bedroom and he heard a
 pop or heard something and saw a small flash, and he
 thought that maybe she had shot into the wall.

¶ 15 Mr. Crisp further testified that he heard Defendant say “that he wasn’t even

 to the bedroom” when he heard the pop and saw the flash. Mr. Crisp also testified

 that he watched Defendant walk with Elliott down the hallway, Defendant “showed

 [Elliott] how far down the hall he had gotten,” and Defendant “stopped before going

 in the door of the bedroom and said, I got right about here and I heard a pop and a
 STATE V. CRISP

 2021-NCCOA-697

 Opinion of the Court

 flash.” At trial, Mr. Crisp listened to the portion of the 911 call recorded after he

 arrived at the scene and testified that Defendant stated that the gun was “[h]alf

 cocked, and it fell off the dresser or something and shot her in the F’ing eye” or was

 “on f[***]ing half cocked. It moved on the table and shot her in the f[***]ing eye.”

¶ 16 Mrs. Crisp testified that when she arrived at the trailer, she heard Defendant

 screaming that Johnson had “shot herself in the eye” and Defendant stated, “I don’t

 know if she grabbed the barrel of the gun and it went off. I don’t know what

 happened.” Mrs. Crisp also testified that Defendant stated, “I don’t know how she

 did this. I don’t want people to think Summer committed suicide. I don’t know what

 happened.” Mrs. Crisp further testified that while she was in the trailer, Defendant

 was crying. He was saying he didn’t know what happened.
 He said they had been arguing[;] that [Defendant’s
 daughter] had gotten up and wanted a bottle; that Summer
 called him a piece of S dad and he called her a piece of S
 mom; and he was trying to figure out what could have
 happened. He said that he was in the kitchen fixing a
 bottle and that he heard a pop and may have seen a flash
 and that he was trying to figure out what happened.

 Mrs. Crisp indicated that, while she was performing CPR on Johnson, she “saw

 [Defendant] move what [she] thought was a gun” near Johnson’s lap.

¶ 17 Elliott testified that Defendant denied having had an altercation with Johnson

 during which he “grabbed the gun and pointed it at [Johnson,] and she grabbed the

 end of the barrel and the gun accidentally went off.” Elliott testified that instead,

 Defendant stated that his daughter was
 STATE V. CRISP

 2021-NCCOA-697

 Opinion of the Court

 in his arms. The argument got heated enough to where . . .
 [Johnson] told him she’d just get a gun and blow his brains
 out.

 [Defendant] stated he took off running with the baby
 into the kitchen, got into the kitchen area, turned back
 around and told her, “Then do it. Just shoot me. Just shoot
 me.” And as he started back towards the bedroom, he
 heard a pop. He walked into the bedroom and found
 [Johnson] laying in the bedroom floor.

 Elliott also stated that Defendant said that he found the gun between Johnson’s legs

 and that Defendant did not know how Johnson got the gun.

¶ 18 At trial, Defendant repeatedly denied that he shot Johnson, that he was in the

 room when the shooting occurred, or that he saw how the fatal shot occurred.

 According to Defendant, during the argument on the morning of 19 February

 [Johnson] screamed back the “I’ll put a bullet in your head”
 thing. That was just a blank statement that she would just
 say. It’s just something she wanted to get off her chest. It’s
 just something she wanted to say. . . .

 And so me and [my daughter] go to walk down the
 hallway. I said, “Well, do it then.” I made it to about right
 at the doorway, I’d say, within a couple of steps to the
 doorway. And the lights were off and everything and it was
 relatively loud, but there was a pop or the snap. And you
 could see a flash and almost instantly there was this smell
 in the room. I guess it was the smell of blood, smell of lead
 or powder.

 Defendant testified numerous times that he did not have the gun that morning until

 he took it out of Johnson’s lap after his mother had begun to perform CPR.

¶ 19 Defendant also repeatedly testified that he was unsure of how Johnson

 suffered the fatal shot. Defendant testified that on the morning of the shooting:
 STATE V. CRISP

 2021-NCCOA-697

 Opinion of the Court

 I was just trying to figure out what happened. I mean a
 million things were running through my mind like, [h]ow
 did this happen? And so like I told mom, maybe she picked
 up the gun muzzle first and it just went off. I’m not saying
 that’s what happened. That’s what I thought could have
 happened.

 And I said, you know, maybe it fell off the dresser
 and went off. Not once did I say that’s what happened.
 That’s what I thought could have happened. Because that
 was what I was going to do, I was going to sit there and
 figure it out. I wanted to know what happened.

 To this day I don’t know what happened. I will never
 know what happened. I didn’t see it happen. I never said
 I saw it happen. But almost instantly I wanted to know
 what happened. I wanted to figure it out.

 Defendant expressly rejected the possibility that he “could have been in a fight and

 [he] could have grabbed the gun and it could have gone off accident[ally].”

¶ 20 The foregoing evidence, when viewed in the light most favorable to Defendant,

 does not suggest that he perpetrated the shooting and “did so without wrongful

 purpose or criminal negligence while engaged in a lawful enterprise.” Riddick, 340

 N.C. at 342, 457 S.E.2d at 731 (citation omitted).

¶ 21 Defendant argues that the 911 call introduced by the State, in which he

 characterized the shooting as accidental, supported an accident instruction. But at

 trial, Defendant explained that he was attempting to inform the 911 dispatcher that

 Johnson had accidentally shot herself, not that he had accidentally shot Johnson.

 After listening to the call, Defendant testified as follows:

 Q. Now, when you say accidental discharge, what are you
 referring to?
 STATE V. CRISP

 2021-NCCOA-697

 Opinion of the Court

 A. Well, I’ve always felt like, you know, on her part it was
 an accident. I never wanted to believe it was intentional. I
 still don’t want to believe it’s intentional. . . .

 So when I said accidental discharge that’s because
 when I saw her last 10 minutes before me and [my
 daughter] got to the door and heard the pop, she did not
 have the gun in her hand. She was standing behind the
 bed the last time I saw her.

 Moreover, the dispatcher noted in the call log that Defendant “advised . . . that

 someone had shot themselves in the eye accidentally with his .22 pistol,” not that

 Defendant reported he had accidentally shot someone. The 911 call was therefore not

 sufficient evidence to entitle Defendant to an instruction on accident.

¶ 22 Defendant also argues that testimony by Dennis McGaha, an informant for the

 State, supported an instruction on accident. McGaha testified that he was

 incarcerated with Defendant in the Swain County Detention Center in February and

 March of 2014. McGaha testified that:

 [Defendant] told me what caliber pistol it was of the gun
 that went off and hit her. He was telling me that they
 argued and stuff beforehand, that this wasn’t the first time
 that a gun had been involved in things between them in a
 heated matter and that there was a child in the home . . .
 while it was happening.

 ....

 He said that they were both kind of wrestling over
 the gun and that it went off. I mean his hands was on the
 gun the same as hers, and that he was holding the baby.

 ....

 And that that day he just said that they was
 STATE V. CRISP

 2021-NCCOA-697

 Opinion of the Court

 wrestling over - - they was arguing over the baby, who was
 going to take off with the baby and drugs. One of them was
 doing drugs and one of them wasn’t, something like that is
 what he said. And just things happened and the gun went
 off. . . .

¶ 23 Defendant’s own testimony that he was not in the bedroom and did not fire the

 gun contradicted McGaha’s testimony. Defendant strenuously denied that he spoke

 with McGaha about the shooting and sought to impeach McGaha’s credibility.

 Defendant may not rely on McGaha’s testimony, which he flatly contradicted and

 extensively impeached, to contend that he was entitled to an instruction on a theory

 he personally disclaimed at trial. See State v. Henderson, 64 N.C. App. 536, 540-41,

 307 S.E.2d 846, 849 (1983) (“[A]s a practical matter, it is important to note that the

 defense of coercion or duress was not raised by the defendant, but by a State’s witness

 . . . [whose] credibility was severely impeached by the defendant . . . .”).

¶ 24 Defendant argues that he is permitted to rely on inconsistent defenses. This

 argument is without merit. Defendant cannot simultaneously deny that he

 committed the shooting and claim that he accidentally committed the shooting. Cf.

 State v. Keller, 374 N.C. 637, 647, 843 S.E.2d 58, 65-66 (2020) (A defendant who

 “claims he has not done an act” is not entitled to an entrapment instruction because

 he cannot simultaneously “claim that the government induced him to do that act.”);

 see also State v. Peterson, 24 N.C. App. 404, 408-09, 210 S.E.2d 883, 886 (1975) (trial

 court did not err by instructing jury that self-defense was inapplicable where the

 defense was inconsistent with defendant’s testimony and otherwise unsupported by
 STATE V. CRISP

 2021-NCCOA-697

 Opinion of the Court

 the evidence).

¶ 25 The evidence, when viewed in the light most favorable to Defendant, does not

 suggest that Defendant “commit[ed] acts which [brought] about the death of”

 Johnson. Riddick, 340 N.C. at 342, 457 S.E.2d at 731 (quotation marks and citations

 omitted). Because there was not sufficient evidence to entitle Defendant to an

 instruction on the defense of accident, the trial court did not err by omitting an

 instruction on that defense.

 B. Sentencing

¶ 26 Defendant next argues that the jury’s verdict of guilty of second-degree murder

 was ambiguous for sentencing purposes because there was evidence that would

 support sentencing as either a Class B1 or a Class B2 felony conviction. Defendant

 contends that this Court should therefore vacate Defendant’s sentence and remand

 for resentencing as a Class B2 felony. We disagree.

¶ 27 “Second-degree murder is defined as (1) the unlawful killing, (2) of another

 human being, (3) with malice, but (4) without premeditation and deliberation.” State

 v. Arrington, 371 N.C. 518, 523, 819 S.E.2d 329, 332 (2018) (quotation marks and

 citation omitted).

 Malice may be shown in at least three different ways:
 (1) actual malice, meaning hatred, ill-will or spite; (2) an
 inherently dangerous act done so recklessly and wantonly
 as to manifest a mind utterly without regard for human life
 and social duty and deliberately bent on mischief; or
 (3) that condition of mind which prompts a person to take
 the life of another intentionally without just cause, excuse,
 STATE V. CRISP

 2021-NCCOA-697

 Opinion of the Court

 or justification.

 Id. (quotation marks and citations omitted). “The second type of malice [is] commonly

 referred to as ‘depraved-heart’ malice[.]” State v. Fuller, 138 N.C. App. 481, 484, 531

 S.E.2d 861, 864 (2000) (citation omitted).

¶ 28 “[T]he crime of second-degree murder has two potential classifications, B1 and

 B2, depending on the facts of the murder.” Arrington, 371 N.C. at 522, 819 S.E.2d at

 332. While second-degree murder is generally classified as a B1 offense, it is

 classified as a B2 offense where depraved heart malice is used prove the offense. N.C.

 Gen. Stat. § 14-17(b) (2019).

¶ 29 A jury need not specify which theory of malice was the basis of its verdict

 finding a defendant guilty of second-degree murder. State v. Lail, 251 N.C. App. 463,

 471, 795 S.E.2d 401, 408 (2016).

 [I]n a situation where no evidence is presented that would
 support a finding that an accused acted with depraved-
 heart malice, specification of malice theory would not
 provide clarity for sentencing purposes; it would be
 inferred from a general verdict that the jury found the
 accused guilty of B1 second-degree murder.

 Id. However, “a general verdict would be ambiguous for sentencing purposes where

 the jury is charged on second-degree murder and presented with evidence that may

 allow them to find that either B2 depraved-heart malice or another B1 malice theory

 existed.” Id. at 475, 795 S.E.2d at 411.

¶ 30 Here, the jury’s verdict was not ambiguous because there was no evidence in
 STATE V. CRISP

 2021-NCCOA-697

 Opinion of the Court

 support of depraved-heart malice. Defendant contends that this case is analogous to

 State v. Mosley, 256 N.C. App. 148, 806 S.E.2d 365 (2017), but Defendant’s reliance

 is misplaced. There,

 defendant testified that as he was arguing with the victim,
 he was holding the rifle with his finger on the trigger and
 without the safety on. Defendant stated this was how he
 always handled the rifle—finger on the trigger and no
 safety. Defendant testified that in this instance, the gun
 went off when the victim grabbed the barrel of the rifle and
 he pushed her away. There was also testimony about the
 safety on the rifle and testimony from a firearm expert that
 “[y]ou would never teach anyone to have their finger on the
 trigger until they are ready to fire.”

 Id. at 152-53, 806 S.E.2d at 368. This Court noted that reckless use of a deadly

 weapon constitutes depraved-heart malice and held that this was sufficient evidence

 from which the jury could have found depraved-heart malice. Id.

¶ 31 Here, by contrast, Defendant argues that the jury could have found depraved

 heart malice based on (1) Defendant’s testimony that he left the gun on the

 nightstand with the safety off and an empty chamber; (2) Simmons’ testimony that

 Defendant “made a comment that the gun wasn’t supposed to go off,” and “that

 [Johnson] grabbed for the gun and it just went off”; (3) Howell’s testimony that

 Defendant “stated that sometime during the argument [Johnson] grabbed the barrel”;

 and (4) McGaha’s testimony. Evidence that Defendant left an empty-chambered gun

 unattended, or that Johnson grabbed the gun, which Defendant maintains he did not

 use and believed was unloaded, is insufficient to show that Defendant committed “an
 STATE V. CRISP

 2021-NCCOA-697

 Opinion of the Court

 inherently dangerous act . . . so recklessly and wantonly as to manifest a mind utterly

 without regard for human life and social duty and deliberately bent on mischief[.]”

 Arrington, 371 N.C. at 523, 819 S.E.2d at 332 (quotation marks and citation omitted).

¶ 32 The evidence tending to show Defendant’s guilt supported only B1 theories of

 malice and the jury was instructed only on those theories. Although the jury returned

 a general verdict convicting Defendant of second-degree murder, it is apparent from

 the evidence presented and instructions given that the jury, by their verdict, found

 Defendant guilty of B1 second-degree murder. The trial court did not err by

 sentencing Defendant as a Class B1 felon.

¶ 33 Defendant argues in the alternative that the trial court plainly erred by failing

 to instruct the jury on the definition of depraved-heart malice. But for the same

 reasons that there was insufficient evidence from which the jury could have found

 depraved-heart malice, there was insufficient evidence to warrant an instruction on

 depraved-heart malice. The trial court did not err by omitting an instruction on

 depraved-heart malice.

 IV. Conclusion

¶ 34 The evidence admitted at trial, viewed in the light most favorable to

 Defendant, did not warrant an instruction on the defense of accident. Because there

 was not sufficient evidence of depraved-heart malice, the jury’s verdict of second-

 degree murder was not ambiguous for sentencing purposes, and the trial court did

 not err by sentencing Defendant as a Class B1 felon.
 STATE V. CRISP

 2021-NCCOA-697

 Opinion of the Court

NO ERROR.

Judges DILLON and WOOD concur.